THE STATE EX REL. L. D. THOMPSON, State Auditor, ET AL., Composing STATE BOARD OF EQUALIZATION, v. LEWIS C. BETHARDS, County Clerk of Shelby County.—9 S. W. (2d) 603.

Court en Banc, October 2, 1928.

*North T. Gentry,* Attorney-General, and *Smith B. Atwood,* Assistant Attorney-General, for relators.

*Roland F. O'Bryen* and *Harry J. Libby* for respondent.

WHITE, C. J.—Relators pray this court to grant a writ of mandamus commanding the Clerk of the County Court of Shelby County to extend on the assessor's books of that county the aggregate valuation of lands of said county as equalized and assessed by the State Board of Equalization.

To the alternative writ respondent filed his return, and thereupon the relators filed a motion for judgment on the pleadings. The facts are as follows:

Early in January, 1928, the Assessor of Shelby County returned to the county court his assessor's book, duly verified, fixing the aggregate value of such lands at $12,697,945.

Respondent, County Clerk of Shelby County, February 18, 1928, certified an abstract of the lands and their valuations to the State Board of Equalization.

The State Board of Equalization, March 28, 1928, increased by ten per cent the aggregate valuation of the said lands, making the valuation $13,967,739.

The County Board of Equalization, April 20, 1928, made the following order:

"It is the order of the County Board of Equalization, after being presented by the secretary of the board with the notice of ten per cent increase in valuation on farm lands as required by the State Board of Equalization and after consideration of same it was agreed by the County Board of Equalization that they could not in their opinion increase farm lands to the valuation set by the state boards, and refused to make said increase in valuation of farm lands, and after hearing all complaints and adjusting the assessor's books as to comparative values, the County Board of Equalization adjourned sine die.

"L. C. BETHARDS,
"Secretary of Board Equalization."

It is alleged in the return that the County Board of Equalization of Shelby County at that time equalized the valuations of the tracts

in Shelby County so that the aggregate value was $12,672,565,—slightly larger than the original valuation of the assessor. The return then admits that respondent has failed and refused and still fails and refuses to extend and compute the taxes levied against the farm lands of Shelby County upon the valuations fixed by the State Board of Equalization, and has extended them upon valuations fixed by the County Board of Equalization.

I. It is first contended by the respondent that the State Board of Equalization had no right or power to increase the valuations of the land in Shelby County ten per cent, "in excess of their admitted true value in money."

This "admitted true value in money" is taken from the petition of relators where it is alleged that the Assessor of Shelby County returned to the county court his assessor's books, "which assessment books contained, among other things, 'the land list' required by Section 12790, Laws 1925, page 367, which 'land list' contained all lands of said county by him assessed according to its true value in money at the time of the assessment, as provided by Section 12802, Revised Statutes 1919."

The petition nowhere states that the valuation placed upon the land by the State Board was the true value; therefore, it is argued that this allegation of the petition is conclusive that the valuations placed upon the land by the assessor *was* the true value in money, and the action of the State Board in raising those values ten per cent was contrary to certain sections of the Constitution.

Section 12802, Revised Statutes 1919, provides that the assessor shall assess property on the assessor's book "at its true value in money at the time of the assessment," with the tracts arranged as provided in Section 12790. Under Section 12810, it is the duty of the county clerk to make out an abstract of the assessment book and certify the same to the State Auditor. And under Section 12855, the State Auditor must lay such abstracts before the State Board of Equalization, whose duty it is to equalize such property among the several counties, with authority to add to the valuation of each class of property, real or personal, in each county, or deduct from the valuation of each class of property.

There is no such thing as an absolute true value of land. The "values" mentioned in the statutes are the *valuations* of the officials whose duty it is to make them. Land is not like commodities which have a fixed market price at a given period. Its value is determined always by the estimate of the party who values it. The requirement of Section 12802, that the assessor assess the property at its true value in money, means nothing more than that such true value is his

estimate; his valuation. The law contemplates that, in accordance with that section, he *does* assess it at its true value as he judges it. [State ex rel. v. Western Union Tel. Co., 165 Mo. 1. c. 516.] The allegation of the petition that he assessed it at its true value adds nothing to the general statement that he assessed it according to that section. To say that he assessed it at a certain value means that *such is* the true value just as clearly as if the words "at its true value in money" were added to the statement. According to the argument of respondent, such valuation is absolute and could never be questioned by any Board of Equalization. Yet the statute provides that the County Board of Equalization may equalize such valuations, and that the State Board of Equalization, under Section 12855, may add to the valuation of each class. The presumption that such added valuation is the true value attaches just as well to the action of the State Board of Equalization and County Board of Equalization as it does to the valuation of the assessor. The allegation of the petition as to the true value in money is merely an allegation that the assessor performed his duty as required by Section 12802, and nothing more. It is not conclusive on either the County Board nor on the State Board.

The respondent refers to Boonville National Bank v. Schlotzhauer, 298 S. W. 732. In that case it was the discrimination of the assessor himself that was under consideration. He had assessed banks at a valuation different from that placed upon other property in the county. Having ascertained the true value he assessed banks higher in proportion than he did other property.

II. After the State Board of Equalization had increased the valuations of lands in the county, the County Board of Equalization then took a hand, as shown in the order quoted above, and in effect sought to annul the action of the State Board of Equalization. That is directly in the face of the proviso of Section 12821, defining the powers of the County Board of Equalization, as follows:

"*Provided,* that said board shall not reduce the value of real or personal property of the county below the value thereof as fixed by the said State Board of Equalization."

That section means, if anything, that the State Board of Equalization fixes values as well as the assessor or the County Board. Therefore the County Board of Equalization of Shelby County had no authority to reduce the valuation fixed by the State Board. When it attempted to equalize the values in accordance with the prior valuations fixed by the assessor, which valuations had been annulled by the order of the State Board of Equalization, the proceeding was a

nullity. The entire proceeding of the County Board in the matter was of no effect. [Trust Company v. Schramm, 269 Mo. 489.]

III. It is further claimed by respondent that the State Auditor and the State Board of Equalization have no authority to compel the Clerk of the County Court of Shelby County to perform the ministerial act demanded. It is argued that only the county court has authority to compel the action of its clerk and that the remedy, if there is one, is first to compel the County Board of Equalization of Shelby County to adjust its values in accordance with the aggregate valuation fixed by the State Board.

The regular course is as follows: After fixing the valuation under Section 12802, the assessor makes an abstract of his footings and forwards the same to the State Auditor. [Sec. 12810, R. S. 1919.] The clerk is liable to a penalty if he fails to do that. And when erroneous assessments are corrected by the county court for persons who make complaints (Sec. 12817), the clerk shall correct the tracts on the books under orders made by the county court (Sec. 12818).

The State Auditor, under Section 12855, must lay before the State Board of Equalization the abstracts of all the taxable property of the State returned to him by the respective county clerks. The State Board then equalizes the valuations of property between the several counties. Under Section 12857, when the State Board of Equalization shall have completed its labors, it must transmit to each county clerk the per cent added to or deducted from the valuation of the property of his county. Then the clerk shall furnish one copy thereof to the assessor, and one copy shall be laid before the annual County Board of Equalization. In this case the copy laid before the County Board of Equalization was the one upon which that board acted without authority, as noted above.

In this emergency it is contended by respondent that the Clerk of the County Court had no duty to perform unless ordered by the county board. He cites Section 12826, Revised Statutes 1919, which provides that "in case the report of the State Board of Equalization be not received at or during the session of the county board, then it shall be the duty of the county clerk to adjust the tax books according to such report when received."

Thus it was argued that the duty of the county clerk with respect to the report of the state board and the carrying out of the purpose of that report is limited to the single instance in which the report is not received during the session of the county board. The record here shows that the county board was in session at the time.

That section, by that provision, does not negative any duty of the county clerk. Whatever its purpose, by its terms it is not exclusive. If there are other sections which require the clerk to perform the duty required here, then such performance may be compelled.

The County Board of Equalization, under Article III, Chapter 119, Section 12821, is authorized to hear complaints and equalize valuations made by the assessor. It is nowhere authorized to increase or reduce the aggregate valuation fixed by the State Board of Equalization. It has no power to assess. [State ex rel. v. Baker, 170 Mo. l. c. 391.] Its duty is to equalize among the separate tracts the valuations fixed by the assessor. If the County Board of Equalization refuses to perform its duty, as it did in this case, then the statutes clearly contemplate that the county clerk shall adjust the valuation in accordance with the orders of the State Board. For instance, in Section 12815 it is said:

"The state, county and all other taxes shall be computed and extended by the county clerk in separate columns against the valuation produced by the equalization of the several classes of property by the State Board of Equalization."

That is not limited to a case where the county board has adjusted and equalized the valuation of the separate tracts in accordance with the aggregate valuation fixed by the State Board. It will apply just as well to a case where the County Board has not acted at all, as in this case.

Section 12823 provides:

"The county clerk shall keep a correct record of the proceedings and orders of the board, and the assessors shall correct all erroneous assessments, and the clerk shall adjust the tax book *according to the orders of the said board* and *the orders of the State Board of Equalization.*"

Where the County Board has made no orders, or where, as in this case, its orders are a nullity, then the county clerk must adjust them according to the orders of the State Board. Such orders do not have to go through the intermediary authority of the County Board. Section 12857 closes with this:

"And it shall be the duty of the State Auditor to require the clerks and the several county courts of this State to keep up the aggregate valuation of real and personal property in their respective counties, for those years in which no State Board of Equalization is held, to the aggregate amount fixed by the last State Board of Equalization."

Here is direct authority of the State Auditor to require the county clerk to keep up values in accordance with the valuations fixed by the State Board. That is, he acts directly with direct authority over the

county clerk in this respect, "for those years in which no State Board of Equalization is held." Can it be implied that the Auditor has no such authority over the clerk as to the board's valuations in those years when the State Board of Equalization is held? Sections 12815 and 12823 are to the contrary.

Considering the entire purpose of the tax law with the limited powers of a County Board of Equalization and the extensive powers of the State Board in equalizing aggregate values, there can be no doubt that it is contemplated that the clerk of the county court has a duty to perform the orders of the State Board of Equalization—direct and positive—and it may compel him to perform such orders if necessity requires.

Obviously, if the State Board has authority to promulgate orders which the county clerk must obey, under Sections 12815 and 12823, it can compel such obedience.

For the reasons mentioned the peremptory writ is awarded. All concur, except *Gentry, J.*, not sitting.