STATE of Missouri, on the Relation of the
STATE TAX COMMISSION of Missouri,
Composed of Hunter Phillips, Carl E. Da-
vis, and Don G. Williams, Relators,

v.

Harry BRISCOE, County Clerk of Johnson
County, Missouri, Respondent.

No. 55054.

Supreme Court of Missouri,
En Banc.

March 9, 1970.

John C. Danforth, Atty. Gen., John C. Craft, Thomas Patten, Asst. Attys. Gen., Jefferson City, for relators.

Gayles R. Pine, C. B. Fitzgerald, Warrensburg, for respondent.

SEILER, Judge.

This is an original proceeding in mandamus. The state tax commission seeks to compel the county clerk of Johnson County to extend the taxes for 1969 against the lands, town lots, and hogs of the county upon valuations which in the aggregate are not less than the valuation fixed by the commission.

■ The case is before us on the pleadings, because relator has filed no response to the return and respondent has filed a motion to dismiss.[1] We therefore look to the well-pleaded material facts in the petition and the return for our facts, State ex rel. Donnell v. Osburn, banc, 347 Mo. 469, 147 S.W.2d 1065, 1066, 136 A.L.R. 667; State ex rel. Slinkard v. Grebe (Mo.App.) 249 S.W.2d 468, disregarding those allegations which are nothing more than the legal conclusions of the pleader. So examined, the essentials of the pleadings are that the tax commission ordered the assessed valuation of land in the county to be increased by 50%, assessed valuation of town lots by 10%, and assessed valuation of hogs by 30%.[2] This the county board of equalization refused to do. Instead it fixed the aggregate value of the real property of the

county some nine million dollars below the value as fixed by the commission and the valuation of hogs some seventy thousand dollars below the value as fixed by the commission.[3] Respondent county clerk refuses to extend the valuations as equalized by the tax commission or to compute the taxes upon such valuations.[4]

In his return, respondent alleges the following justification for his refusal:

■ 1. Rejection by the county board of equalization of the commission's increase. This is not a valid excuse, State ex rel. Thompson v. Bethards, banc, 320 Mo. 1164, 9 S.W.2d 603. The county board is equally bound by the intercounty increases of the tax commission.

■ 2. Meetings and discussions earlier in the year among the county court, city officials, and representatives of the commission relative to the commission's insistence that there be a reevaluation of the real and personal property of the county, culminating in the county's hiring a professional appraisal firm to do the work over a period of 18 months at a fee of $112,500. This argument indicates even the county officials were doubtful as to whether the existing county valuations were adequate, while asserting that correction through the intercounty equalization order was precluded by the conduct of the commission. While the county no doubt would prefer that the tax commission delay action until the appraisal is completed, there is no claim made the commission promised the county

---

1. Two days before the case was to be argued in this court, four resident taxpayers of the county sought leave to intervene on their own behalf and as representatives of all other taxpayers similarly situated, contending the actions of the state tax commission were arbitrary, unconstitutional, and affected the would-be intervenors adversely. We overruled the motion to intervene.

2. Intercounty assessments are the business of the state tax commission, Art. X,

Sec. 14, 1945 Constitution, V.A.M.S.; Sec. 138.390, RSMo 1959, V.A.M.S.

3. Sec. 138.030, RSMo 1959, V.A.M.S., provides the county board shall not reduce the aggregate values below those fixed by the commission.

4. Secs. 137.235, 138.060, and 138.080, RSMo 1959, V.A.M.S., require the clerk to adjust the tax books in compliance with the valuations as equalized by the commission.

it would take no action in the meantime [5] (we do not undertake to decide whether the commission could bind itself by such a promise if it made one) and it is the duty of the tax commission to equalize the valuation of property by class among the respective counties of the state. It must do this annually. It is not required to delay until the county completes its own valuations. Sometimes reassessments, as a practical matter, must be made piecemeal, Cupples Hesse Corp. v. State Tax Commission (Mo.Sup.) 329 S.W.2d 696, 700.

■ 3. Failure of the commission to call the county board of equalization back into session before October 31st, the last date on which the clerk could deliver the tax books to the collector.[6] Again this is no legal excuse for the clerk's continuing refusal to extend the increased valuations and compute the taxes accordingly.

■ 4. Because owners of Johnson County land located in reorganized school districts headquartered outside the county would have to pay increased school taxes if Johnson County land is increased in valuation. Such result, if it actually comes about, is no ground for the clerk not to perform his statutory duties. The argument also assumes the valuations in the outside counties were also too low. It overlooks the possibility that if the assessed values in the outside counties were already at the proper level, then the increase in the segment of the school district in Johnson County would bring that segment up to the level of the assessment in the main portion of the school district. If so, it would not be unfair to the taxpayers in Johnson County.

■ 5. Because the collector has already made up and delivered the 1969 tax statements. This fact would not excuse the clerk's refusal. By Sec. 137.300, RSMo 1959, V.A.M.S., the clerk, where there is a failure to levy or extend taxes, is required to make supplemental tax book for the year involved.

■ 6. Because since the county would have to reduce its levy so as not to obtain more revenue in 1969 with the increased valuation than it did in 1968,[7] there would result a substantial saving for railroad and utilities for 1969, whose valuations are fixed by the commission. Even if this should occur, it is not a valid ground for the clerk to interfere with the tax extension and levy process of the county. Again the argument assumes the assessment fixed by the commission on the utilities is not on a level which is at least equal to the level which the commission is seeking to attain for the county as a whole. If it is, then no further increase is needed to bring the utilities to a proper level and there is no windfall to the utilities. By Sec. 138.420 (3), RSMo 1959, V.A.M.S., the commission is required to report its assessment on utilities to the county clerks at the same time it returns its other valuations, so the county board is fully informed as to the utility valuations made by the commission and under Sec 138.380, supra, could report to the commission any underevaluation.

---

5. In fact, all indications were otherwise, because the correspondence between the county and the commission, attached as exhibits to the return, shows the commission made it plain the Johnson County assessment ratio was among the lowest in the state and the county could expect a substantial increase by the commission in 1969.

6. Under Sec. 137.290, RSMo 1959, V.A. M.S., the clerk must deliver the book to the collector on or before October 31st. Under Sec. 138.400, RSMo 1959, V.A.

M.S., where the final valuation by the county board differs materially from the valuation fixed by the commission, the commission may order the county board called into session up to November 1st.

7. Sec. 137.073, RSMo 1959, V.A.M.S., provides whenever the valuation is increased 10% or more by the commission, the taxing authorities shall lower the rate so as to produce substantially the same amount of taxes as estimated from the orginal levy.

7. Finally, because the commission's order of increase was made "wrecklessly (sic), arbitrarily and capriciously" and for the purpose of increasing assessed valuations "excessively and unequal of values" among the several counties of the state; that this was a legal fraud and the commission is estopped from maintaining the action. These allegations are, at most, the legal conclusions of the respondent, unsupported by any pleaded material facts. Words such as "illegal, invalid, void, unlawful, unconstitutional, improper, arbitrary and capricious", when unsupported by pleaded facts to show their basis, are conclusions of the pleaders and not statements of fact, not to be considered in determining whether a claim or a defense have been stated, State ex rel. City of Creve Coeur v. St. Louis County (Mo.Sup.) 369 S.W.2d 184, 187.

In our judgment, none of the foregoing affords respondent any legal excuse for failing to perform his statutory duty. State ex rel. Thompson v. Bethards, supra, was a mandamus action by the state auditor and others against the county clerk to compel him to extend on the assessor's books the aggregate valuation of lands as equalized and assessed by the state board of equalization, the predecessor of the present state tax commission. This court held that the county board of equalization had no authority to reduce the valuation fixed by the state board and that if it refused to perform its duty, then the county clerk was to adjust the valuation in accordance with the orders of the state board. The court held at 9 S.W.2d 1. c. 606, " * * * the clerk of the county court has a duty to perform the orders of the state board of equalization, direct and positive, and it may compel him to perform such orders if necessity requires." Accord: First Trust Co. of St. Joseph v. Wells, 324 Mo. 306, 23 S.W.2d 108; State ex rel. Thompson v. Jones, banc, 328 Mo. 267, 41 S.W.2d 393.

The allegations of constitutional infirmities made by respondent in the present case are nothing more than legal conclusions, made in a collateral attack. This court has held the action of the state board in fixing assessment values is judicial in character, not subject to collateral attack, State ex rel. Johnson v. Merchants' & Miners' Bank, 279 Mo. 228, 213 S.W. 815; May Department Stores Co. v. State Tax Commission (Mo.Sup.) 308 S.W.2d 748, 757. Nothing is stated to substantiate the conclusion that the tax commission acted arbitrarily and capriciously. There is nothing to support the conclusion that the commission's order of increase was made to produce an excessive discriminatory or unequal valuation of real and personal property among the several counties of the state. As pointed out in the case of State v. Wiley, 176 Wash. 641, 30 P.2d 958, where mandamus proceedings were instituted to compel the assessor to extend on the tax rolls the valuation as fixed by the state board of equalization and the assessor sought to defend his refusal on the ground that the action of the state board was arbitrary, capricious, and illegal, the various county assessors in the state could not be permitted against instructions from a constitutional tribunal having statewide jurisdiction in the matter to decide each for himself whether he would obey such instructions.

The county clerk must perform the ministerial duties enjoined upon him by law and must extend and compute the taxes on the valuations set by the state tax commission. If it finally turns out that some individual taxpayer in Johnson County is charged with a higher amount of tax than he would have had under the assessment and rate as originally proposed by the county board, he can have his day in court if he so desires by resort to the payment of taxes under protest procedure prescribed in Senate Bill No. 39, 75th General Assembly, effective October 13, 1969, now Sec. 139.-031, see Vernon's Mo. Legislative Service, No. 2, p. 159. This statute also provides a procedure for refund of taxes mistakenly or erroneously paid. The motion to dis-

**6**

miss is overruled and the alternative writ is ordered made peremptory.

HENLEY, C. J., FINCH, DONNELLY, MORGAN, and HOLMAN, JJ., and BRADY, Sp. J., concur.

STORCKMAN, J., not sitting.