STATE ex rel. J. David CASSILLY et al., Plaintiffs-Appellants-Respondents,

v.

James RINEY et al., Defendants-Respondents-Appellants,

Francis M. Barnes, III, et al., Intervenors-Appellants.

No. 60392.

Supreme Court of Missouri, En Banc.

Jan. 25, 1979.

John D. Ashcroft, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, George W. Lang, II, Thomas W. Wehrle, Karen Weinhaus, Clayton, for defendants-respondents-appellants.

Martin W. O'Brien, Ballwin, Martin J. Bregman, Chestertown, for plaintiffs-appellants-respondents.

DONNELLY, Judge.

The question on this appeal is whether each owner of real estate in St. Louis County shall be compelled, *by writ of mandamus,* to bear his proper share of the cost of government, as against other owners of real estate in the county. We believe that each taxpayer should bear his proper share. However, we do not believe that mandamus should be utilized *at this time.*

The Circuit Court of St. Louis County, by way of writ of mandamus, ordered the Director of Revenue and Assessor of St. Louis County to assess all land in St. Louis County, not qualifying as agricultural or horticultural property, at thirty-three and one-third percent of its true value in money. The amended order of the Circuit Court reads, in part, as follows:

"1. George Leachman Director of Revenue of St. Louis County, Missouri and Frank J. Antonio the Assessor of St. Louis County are directed to assess all land qualifying as agricultural and horticultural property under Sections 137.017 and 137.019 V.A.M.S. at thirty-three and one-third (33⅓) percent of its current value for agricultural or horticultural use. Excepting real property required to be assessed by the State Tax Commission under Section 138.420, said Director and Assessor are directed to assess all remaining real property located in St. Louis County at thirty-three and one-third (33⅓) percent of its true value in money in conformity with Section 137.115 V.A. M.S.

"2. The Director of Revenue, Assessor, and David Christman, Paul Ritchey and William Crume, comprising the St. Louis County Board of Equalization, are ordered to devise a system in conformity with acceptable assessment practices

whereby assessments of real property in St. Louis County will be kept current on an annual basis.

"3. Robert Love, Donald Williams and Steven Snyder, comprising The State Tax Commission, are directed to initiate to monitor said Assessor for failing to comply with the requirement that real property in St. Louis County be assessed at thirty-three and one-third (33⅓) percent of its true value in money, and to initiate proceedings to enforce the penalties provided by law against said Assessor for failing to comply with the provisions of V.A.M.S. 137.115, one year from this date, per their authority in Section 138.410 V.A.M.S.

"4. Said Director of Revenue, Assessor, Defendants-Respondents are allowed one (1) year in which to take substantial steps toward compliance with the orders of this Court. The Court will retain jurisdiction over the said parties. In the event there has not been substantial efforts toward compliance satisfactory to the Court, within one (1) year from the date of this Order, the Court shall enter such further Orders as it deems proper at that time."

The parties stipulated, in part, as follows:

"1. Plaintiffs are owners of new homes in St. Louis County. As used in these Stipulations, the term 'new homes' means a home which was constructed since mid–1973;

*    *    *    *    *    *

"3. In St. Louis County approximately 319,000 individual parcels are listed for assessment purposes;

"4. The last 'general reassessment', by that, meaning a reappraisal for assessment purposes of every parcel in St. Louis County, was concluded in 1960 with corrections and adjustments based thereon performed for three (3) or four (4) years thereafter. * * *

"5. Since the last general reassessment the Assessor has assessed newly constructed homes at one-third (⅓) of current market value at the completion of construction. * * *

"6. In general, the assessed valuations of single-family residence [sic] which were appraised in the last general reassessment in St. Louis County have not been updated since the general reassessment. * * *

"7. In general, the assessed valuations of homes completed since 1960 have not been updated since the homes were appraised for assessment purposes at the completion of construction. * * *

"8. Where an improvement has been made to an existing single-family residence (for example, the addition of a room to an existing residence), it has been the practice of the Assessor's Office to determine the assessed value of the addition and to add this amount to the assessed valuation of the existing structure. * * *

"9. The resources available to the Assessor's Office are not sufficient to enable the Assessor to reappraise every parcel of real property in St. Louis County on a regular basis. The Assessor has reassessed many commercial and industrial properties since the last general reassessment;

"10. Since the last general reassessment in St. Louis County real property values in St. Louis County have increased in some areas and decreased in other areas. * * *

"11. The Assessor of St. Louis County estimates that the one-time cost of general reassessment in St. Louis County to be approximately $6,000,000. * * *."

Section 137.080, RSMo 1969, provides that all real estate shall be assessed annually.

Section 137.115, RSMo 1969 (as amended Laws 1973, p. 213, § 1), provides that the assessor in all counties of this state shall assess property "at thirty-three and one-third percent of its true value in money * * *."

Section 138.030, RSMo 1969, provides that members of a county board of equalization have the power and the duty "to fairly and impartially equalize the valuation of all real estate * * * taxable by the county."

Section 138.410, RSMo 1969, places general supervision over all the assessing officers of this state and over county boards of equalization in the State Tax Commission. It reads as follows:

"1. The commission shall exercise general supervision over all the assessing officers of this state, over county boards of equalization and appeal in the performance of their duties under this chapter and all other laws concerning the general property tax and shall institute proper proceedings to enforce the penalties and liabilities provided by law for public officers, officers of corporations and individuals failing to comply with the provisions of this chapter, and of all laws relating to the general property tax.

"2. In the execution of these powers the said commission shall call upon the attorney general or any prosecuting or circuit attorney in the state, to assist this commission in the enforcement of laws with the supervision of which this commission is charged, and when so called upon it shall be the duty of the attorney general, and the prosecuting or circuit attorneys in their respective counties, to assist in the commencement and prosecutions of actions and proceedings for penalties, forfeitures, removals and punishments for violation of the laws in respect to the assessment and taxation of property, and to represent the commission in any litigation which it may wish to institute or in which it may become involved in the discharge of its duties."

■ Article X, § 3 of the Constitution of Missouri requires that taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." The Stipulation, supra, evidences the fact that this constitutional provision is being violated. It is apparent that taxes are not uniform as between new homes and homes not assessed since 1960.

■ However, we must conclude from the explicit provisions of § 138.410, supra, that the General Assembly intended that the State Tax Commission should be given first opportunity to enforce the "laws relating to the general property tax."

We are aware of the complexities of the property tax law and acknowledge the wisdom of the General Assembly in providing an administrative agency to deal with this specialized field. We note the words of Justice Weintraub in *Switz v. Middletown Twp.*, 23 N.J. 580, 130 A.2d 15, 30 (1957), and believe they are particularly appropriate here:

"I have posed a number of questions and answered none. The long and short of it is that we know enough to be wary, but not enough to know the answers. And the reason is evident. The record before us, and indeed the judicial process itself, are inadequate to ascertain the facts with respect to problems of such breadth. If we could resolve them by the stroke of a pen, I would gladly join. But for all I know we might be bulling through a china shop."

We conclude that the State Tax Commission should be given first opportunity to resolve the assessment problem in St. Louis County. We note from the record in this case that the Commission is understaffed. However, constitutional rights are involved and we are confident the General Assembly will remedy that situation without delay. If the Commission does not act in St. Louis County within a reasonable time, mandamus against the Commission may be sought in this Court.

In *State ex rel. Cranfill v. Smith*, 330 Mo. 252, 256, 48 S.W.2d 891, 892, 893 (banc 1932), this Court said:

" * * * Mandamus is not a writ of right. Its issuance lies in the sound discretion of the court. Before granting the writ the court will look to the public interest which may be concerned, and act in view of all the existing facts and with due regard to the consequences."

We are convinced that the public interest requires that the "experts" be given an opportunity to attempt to resolve the difficult problems presented in this case. To borrow again from Justice Weintraub, we are "not unmindful that in the interim some

taxpayers will be paying more than they should pay according to the constitutional * * * mandate. * * * The larger consideration which to * * * [us] is controlling is the welfare of the entire public which might be seriously invaded by peremptory action at this time."

The judgment of the trial court is reversed.

MORGAN, C. J., and BARDGETT, J., concur.

RENDLEN, J., concurs in result.

SEILER, J., concurs in part and dissents in part in separate opinion filed.

SIMEONE, J., concurs in separate concurring opinion filed.

WELLIVER, J., concurs and concurs in separate concurring opinion of SIMEONE, J.

SEILER, Judge, concurring in part and dissenting in part.

As to what is said in the principal opinion, the opinion on rehearing, and in the concurring opinion of Simeone, J., as to the state tax commission, I concur.

However, I would not reverse the trial court outright. I believe relators are entitled to partial fruits of victory here. I would not reverse as to those portions of the trial court's order which direct the director of revenue, the assessor, and the board of equalization of St. Louis County to proceed as set forth in the trial court's order.

Rather, I would order the circuit court to retain jurisdiction of the cause, but to suspend enforcement of its order for a reasonable time, not to exceed one year, pending action by the Commission to compel the county assessor to perform his duties. If such action is not forthcoming, the circuit court should then enforce its original order to take such other action as it deems necessary at that time.

There is no question but that the local officials are not performing their duties. Relators are entitled to relief against them without having to wait further than the time given said officials to perform under the order of the trial court. Relators should not be put to the time, trouble, and expense of starting all over again later against their local officials. They should be permitted to maintain their position pending further developments.

SIMEONE, Judge, concurring.

I concur in the majority opinion of Donnelly, J., not because I believe that the trial court erred in issuing its order but because I believe that the issues are so complex and are of such state-wide concern that the whole issue should first be addressed by the State Tax Commission.

If the issue were purely a local one and if it were clear that the trial court in St. Louis County had the authority to order state-wide reassessment, I would affirm the judgment.

Under the law the assessor in all counties shall assess property at one-third its true value. Section 137.115, as amended, 1973, p. 213, § 1. The law is clear to me that the State Tax Commission not only has the authority to exercise general supervision over all assessing officers of the state and county boards of equalization, but is required to enforce all the laws "relating to the general property tax." That duty is clear under § 138.410. The power of the Commission is not merely to call upon the attorney general to seek penalties but the attorney general is to "represent the commission in any litigation which it may wish to institute or in which it may become involved in the discharge of its duties."

To me it is the duty of the Commission, under its charge under the law, to devise without unnecessary delay a system in conformity with acceptable assessment practices to require assessments will conform to the law, to seek the necessary implementing funds, to cooperate with the General Assembly, to issue such guidelines it deems necessary to see that the law is enforced and to resolve the assessment problem not only in St. Louis County but throughout the State where it is required. This, of course,

cannot be done overnight. But the process should begin now. The Commission, in my opinion, has the power and it should be exercised. I have every confidence that all segments of government which have the power to resolve the issue can cooperate and achieve a solution which will conform to the law within a reasonable period of time.

Decisions implying that the Commission has no authority to equalize intra-county equalization are, in my opinion, not controlling in view of the explicit mandates of § 138.410. The State Tax Commission has the power and, in my opinion, the duty to begin to implement its powers under § 138.-410, and under appropriate guidelines order assessors to follow the law and assess real property at one-third its true value.

If the Commission does not act within a reasonable period of time, then I agree with Judge Donnelly that "mandamus against the Commission may be sought in this Court."

## OPINION ON REHEARING

### PER CURIAM.

This court overruled appellant-respondent Cassilly's motion for rehearing, but sustained appellant State Tax Commission's like motion to consider further the State Tax Commission's contention that it does not have the legal authority to involve itself in any degree in intra-county equalization but only to equalize aggregate valuations between counties—inter-county equalization. The parties were notified, however, they could argue all points as on original appeal. The commission argues that the opinion was in error in its interpretation of the law in placing the primary duty and responsibility for intra-county equalization on the commission and requests that, if such a duty is held to exist, the court clarify the authority of the State Tax Commission.

This case has now been reargued. The opinion previously adopted is reaffirmed.

The law, sec. 137.115.1, RSMo 1973, places the primary duty upon the county assessor to "make a list of all real . . . proper-

ty taxable in his . . . county and . . . shall assess the property at thirty-three and one-third percent of its true value in money."

Section 138.410, RSMo noted *supra* in the opinion, makes it clear that the State Tax Commission has the duty, responsibility and right to exercise general supervision over all county assessing officers and the county boards of equalization, and is required by that section to enforce all the laws "relating to the general property tax." In short, it is a primary duty of the State Tax Commission to exercise general supervisory power over county assessors and boards of equalization to the end that sec. 137.115.1, *supra*, and other general property tax laws are complied with by the assessors and boards of equalization. Section 138.415 makes it abundantly clear that the State Tax Commission has this responsibility as it specifically requires the commission to inquire into the methods of assessment and taxation and determine whether the assessing officers are discharging their duties as required by law, etc. To this end, the commission has powers commensurate with its responsibility and may issue orders designed to enforce the law. Under sec. 138.410.2, *supra*, the commission is not limited to calling upon the attorney general only to seek penalties but may call upon the attorney general "to represent the commission in any litigation which it may wish to institute or in which it may become involved in the discharge of its duties."

The State Tax Commission has the lawful authority to supervise all assessing officers and boards of equalization and to exercise administrative powers with reference thereto and has the aid of the attorney general to enforce in the courts the property tax laws of this state.

The primary duty to exercise this supervising authority is in the State Tax Commission rather than the circuit courts. It is for that reason that the circuit court judgment was reversed. The purpose of this per curiam is to leave no doubt about the responsibility and authority of the com-

mission to require local assessors and county boards of equalization to assess real property at one-third of its true value in money. The commission has that power under the controlling statutes of this state, and cases thought to carry implications to the contrary are not controlling.

All concur.