IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
 EVELYN BRAVO, et al., )
 )
 Appellants, )
 v. ) WD84086
 )
 ) OPINION FILED:
 JACKSON COUNTY BOARD OF ) December 21, 2021
 EQUALIZATION, et al., )
 )
 Respondents. )

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable Patrick W. Campbell, Judge

 Before Division Two: Mark D. Pfeiffer, Presiding Judge, and
 Gary D. Witt and Anthony Rex Gabbert, Judges

 Ms. Evelyn Bravo, Mr. George Morales, Ms. Lucy Avila, the Ivanhoe Neighborhood

Council, and the Westside Neighborhood Association (“Petitioners”) appeal from the judgment of

the Circuit Court of Jackson County, Missouri (“circuit court”), dismissing with prejudice their

petition for declaratory judgment and denying their petition for writ of mandamus against the

Board of Equalization of Jackson County, Missouri, Mr. Christopher Smith, Ms. Marilyn Shapiro,

and Ms. Forestine Beasley, in their official capacities as members of the Board of Equalization

(collectively, “the Board”).1 We affirm.

 1
 “An appeal will lie from the denial of a writ petition when a lower court has issued a preliminary order in
mandamus but then denies a permanent writ.” State ex rel. Tivol Plaza, Inc. v. Mo. Comm’n on Human Rts., 527
S.W.3d 837, 841 (Mo. banc 2017). Because the circuit court issued preliminary writs of mandamus and then denied
 Statutory Context

 Before addressing the merits of Petitioners’ appeal, we review the statutory context. The

new assessed values of real property are determined by the county assessor as of January first of

each odd-numbered year and entered in the assessor’s books. § 137.115.1.2 Those same assessed

values apply in the following even-numbered year, “except for new construction and property

improvements which shall be valued as though they had been completed as of January first of the

preceding odd-numbered year.” Id.

 “The assessed valuation of property is its true value in money.” Union Elec. Co. v. Estes,

534 S.W.3d 352, 366 n.19 (Mo. App. W.D. 2017) (internal quotation marks omitted). “True value

in money is the fair market value of the property on the valuation date, [ ], and is a function of its

highest and best use, which is the use of the property which will produce the greatest return in the

reasonably near future.” Id. (internal quotation marks omitted). “It is at best an estimate.” Id.

(internal quotation marks omitted). “The assessed value [of residential property] is a percentage

of the appraised value, and serves as the basis for calculating real estate tax liability. By statute,

the assessed value of residential property in Missouri is 19% of the appraised value.” Crowell v.

Cox, 561 S.W.3d 882, 885 n.3 (Mo. App. W.D. 2018) (citing § 137.115.5(1)(a)). An assessor is

required to conduct a physical inspection of residential real property before increasing an assessed

valuation by more than fifteen percent since the last assessment, excluding increases due to new

construction or improvements. § 137.115.10. If an assessor increases the valuation of any real

property, the assessor must notify the record owner of such increase. §§ 137.180.1, 137.355.

them on the merits, the losing parties (in this case, Petitioners) can appeal. See id. at 842 n.3. See also Clarkson
Constr. Co. v. Warren, 586 S.W.3d 297, 301 (Mo. App. W.D. 2019) (“When a circuit court issues a preliminary order
and a permanent writ later is denied, the proper remedy is an appeal.”).
 2
 All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented.

 2
 Any landowner who is aggrieved by the assessment of his or her property may appeal to

the county board of equalization before the second Monday in July; provided, that the board may

in its discretion extend the time for filing such appeals. §§ 137.180.1, 137.385. The county board

of equalization is authorized to “hear complaints and equalize the valuation and assessments upon

all real and tangible personal property taxable by the county so that all the property shall be entered

on the tax book at its true value.” § 138.030.2. It is also authorized to, “in a summary way,

determine all appeals from the valuation of property made by the assessor, and shall correct and

adjust the assessment accordingly.” § 138.060.1. The county board of equalization is authorized

to “raise the valuation of all tracts or parcels of land . . . as in their opinion have been returned

below their real value” or “reduce the valuation of such tracts or parcels of land . . . which, in their

opinion, has been returned above its true value as compared with the average valuation of all the

real and tangible personal property of the county.” § 138.050(1), (2). In counties with a charter

form of government, like Jackson County, the board of equalization “shall provide the taxpayer

with written findings of fact and a written basis for the board’s decision regarding any parcel of

real property which is the subject of a hearing before any board of equalization.” § 138.100.3.

 “The State Tax Commission supervises and directs assessment and taxation laws.” 12 CSR

30-1.010(1). “The [C]ommission has the duty to exercise general supervision over all

assessing officers of the state and over county boards of equalization.” 12 CSR 30-1.010(1)(A)

(emphasis added). Every owner of real property has the right to appeal from the local board of

equalization to the State Tax Commission before September 30 or thirty days following the final

action of the local board of equalization, whichever date is later, “concerning all questions and

disputes involving the assessment against such property, the correct valuation to be placed on such

property, the method or formula used in determining the valuation of such property, or the

 3
assignment of a discriminatory assessment to such property.”3 § 138.430.1 (emphasis added).

The State Tax Commission is authorized to investigate all such appeals and to correct any

assessment or valuation that is shown to be “unlawful, unfair, improper, arbitrary or capricious.”

Id. See also 12 CSR 30-1.010(3). The decision of the State Tax Commission is subject to judicial

review. §§ 138.432, 536.110. The only decisions of a local board of equalization that an owner

of real property may directly appeal to the circuit court are decisions “involving the exclusion or

exemption of such property from assessment or from the tax rolls” or decisions involving “the

taxable situs of such property.” § 138.430.3.

 Factual and Procedural Background4

 In 2019, the Jackson County Assessment Department performed the bi-annual assessment

of all real property located within Jackson County (the “2019 Assessment”). Beginning in June

2019, property owners in Jackson County began receiving their notice of assessment by mail,

indicating, among other things, the market value assigned by the Assessment Department for the

individual taxpayer’s property as part of the 2019 Assessment. Following the 2019 Assessment,

the Board received a record number of appeals. The assessment of many individual residential

 3
 The uniformity clause of article X, section 3 of the Missouri Constitution provides that taxes shall be
“uniform upon the same class or subclass of subjects within the territorial limits of the authority levying the tax.”
“The uniformity clause in section 3 . . . does not apply to valuations, nor does it impose any obligations or limitations
on authorities responsible for valuing or assessing property. Instead, section 3 specifically addresses value in a later
provision and authorizes laws to prescribe ‘the methods of determining the value of property for taxation.’”
Armstrong-Trotwood, LLC v. State Tax Comm’n, 516 S.W.3d 830, 836 (Mo. banc 2017) (quoting MO. CONST. art. X,
§ 3).
 4
 When a circuit court rules on a motion to dismiss, it can only consider the pleadings, and appellate review
is also limited to the pleadings. State ex rel. Cmty. Treatment, Inc. v. Mo. Comm’n on Human Rts., 561 S.W.3d 107,
111-12 (Mo. App. W.D. 2018). Accordingly, this Court reviews the circuit court’s grant of a motion to dismiss a
petition for a writ of mandamus in the light most favorable to the relator’s claims, assumes all of the facts alleged in
the pleading are true, construes those facts liberally in favor of the relator, gives the relator the benefit of every
reasonable intendment favorable to its pleading, and judges the pleading with broad indulgence. Id. at 111. “The
rules for mandamus proceedings are different from the rules for normal civil actions in circuit court.” Bartlett v. Mo.
Dep’t of Ins., 528 S.W.3d 911, 913 (Mo. banc 2017). Because an application for a writ of mandamus “shall be
accompanied by suggestions in support thereof,” as well as exhibits “that may be essential to an understanding of the
matters set forth in the petition in mandamus,” we consider the facts alleged in both the petition, suggestions in support,
and exhibits. See Rule 94.03.

 4
properties increased in excess of 600%, and the assessment of many vacant lots increased in excess

of 1,000% when compared with their 2018 market values assigned by the Assessment Department.

 In November 2019, numerous complaints and appeals were lodged with the Board by the

Petitioners and others alleging that the 2019 Assessment was systematically discriminatory against

a substantial group of Jackson County residential taxpayers in that:

 a. There is significant and illegal market value regressivity in the predominantly
 African American and Hispanic areas of the County, meaning that lower-income
 homes in these areas were appraised at a much higher percentage of their fair market
 value than higher-value homes in these areas — and in the County overall. This
 pattern led to assessment increases very often exceeding 100% on households
 unprepared for the consequent tax increases;

 b. The Assessor over-appraised residential properties in the predominantly African
 American and Hispanic areas of the County 43% more often than in the rest of the
 County;

 c. The Assessor badly failed to meet appraisal requirements of uniformity in the
 predominantly African American and Hispanic areas of the County, where the
 uniformity failure rate was more than three times higher than in the County as a
 whole.

 d. The Assessor capped appraised increases at 14.9% for 54% of the properties that
 increased by 14.9% or more in the non-African American and Hispanic areas of the
 County, compared to only 1% of such properties within that minority area, thus
 ensuring that the extremely large increases fell more heavily there.

 The Board held a special hearing on November 21, 2019, to receive testimony as to the

discriminatory nature of the 2019 Assessment. However, the Board did not issue a decision with

written findings of fact approving or denying the request for an intra-county order of equalization.5

 5
 One of the chief complaints of the Petitioners is that the Board refuses to give an answer one way or the
other and we, too, are perplexed why the Board would go to the effort to conduct an evidentiary hearing and then
refuse to provide an answer to the question posed—whether that answer is procedural or substantive. If, as argued by
the Board on appeal, the Petitioners do not have a statutory right to lodge the discriminatory assessment challenges to
the Board (i.e., complaints that the Petitioners lack standing), the Board should simply say so in a written ruling. Such
written ruling would provide the Petitioners with the vehicle enabling them to exhaust the administrative remedy that
the Board says they must do—appeal to the State Tax Commission. See 12 CSR 30.3.010(1)(A) (an appeal from the
Board’s decision must be made via forms approved by the State Tax Commission and said forms generally require
that the Board’s written decision be attached to the appeal form). Principles of fairness and equity simply cannot be
satisfied by the Board refusing to provide a written ruling to the Petitioners (to enable them to proceed to the State

 5
 In December 2019, Petitioners filed suit in the circuit court seeking declaratory and

injunctive relief. Petitioners are three persons who own residential real property in Jackson County

and two neighborhood associations. In their lawsuit, the property-owner Petitioners, “in their

individual capacities and on behalf of the public at large of Jackson County, Missouri,” and the

neighborhood-association Petitioners sought declaratory and injunctive relief on the basis that:

 the Assessor has systematically discriminated against a substantial group of
 Jackson County residential taxpayers, and the Board has both the authority to enter
 intra-county orders of equalization, equalizing residential real property values in
 Jackson County, Missouri for the tax year 2019, so that all the property affected by
 such an order shall be entered on the tax book free of discrimination and that the
 Board has the duty to enter such an order[.]

 Petitioners claimed that the Board had “a duty to correct area-wide, systemic

discriminatory assessments through the entry of an intra-county order of equalization.” Petitioners

requested that the circuit court: (1) enter a declaratory judgment that the Assessment Department

systematically discriminated against a substantial group of Jackson County residential taxpayers,

and that the Board had the authority and duty to enter intra-county orders of equalization to

equalize residential real property values in Jackson County for the tax year 2019; and (2) issue a

writ of mandamus ordering the Board to enter an order of intra-county equalization. On

February 7, 2020, the circuit court entered preliminary orders in mandamus against the Board.

Tax Commission and exhaust their administrative remedies) on the one hand, but simultaneously accusing the
Petitioners of failing to exhaust their administrative remedies on the other hand.

 As we point out in today’s ruling, it is first the role of the State Tax Commission to supervise and admonish
the Board if it finds that the Board is required to act when it refuses to do so. In fact, the State Tax Commission is
authorized to seek a writ of mandamus from the courts if the Board refuses a lawful directive of the State Tax
Commission. See State ex rel. Comm’rs of State Tax Comm’n v. Schneider, 609 S.W.2d 149, 153 (Mo. banc 1980)
(State Tax Commission filed a petition for writ of mandamus seeking to compel the county assessor and the county
board of equalization to follow the commission’s order to implement a plan for equalization of real property and the
court held that the “order of the State Tax Commission was a valid order which obligated St. Louis County to
implement its proposed and approved plan for revaluation on July 1, 1980. That plan has not been implemented at
this time; the alternative writ of mandamus is made peremptory.”); see also State ex rel. State Tax Comm’n v. Briscoe,
451 S.W.2d 1, 3 (Mo. banc 1970) (State Tax Commission authorized to seek a writ of mandamus to compel the county
clerk of Johnson County to follow the commission’s order relating to tax valuations).

 6
 On February 21, 2020, the Board filed a motion requesting that the circuit court dismiss

with prejudice Petitioners’ lawsuit. The Board argued that it exercises discretion in equalizing

property values and does not have a statutory or ministerial duty to enter an intra-county

equalization order. The Board further argued that Petitioners lacked standing to challenge the

assessed valuations of all residents in Jackson County because a taxpayer lacks standing to

challenge the property tax assessments of other taxpayers. Finally, the Board argued that the

statutory scheme provided Petitioners an adequate remedy for review of property tax assessments,

and Petitioners failed to follow those administrative remedies to exhaustion.

 On May 13, 2020, the circuit court held a hearing on the Board’s motion to dismiss and,

on September 2, 2020, the circuit court entered its judgment denying Petitioners’ petition for writ

of mandamus and dismissing with prejudice their petition for declaratory judgment for, in pertinent

part, the failure to exhaust available administrative remedies. Specifically, the circuit court

determined that the State Tax Commission had the responsibility and authority to review the

Board’s actions and Petitioners had failed to exhaust that administrative process.

 Petitioners appealed.

 Standard of Review

 An appellate court reviews a circuit court’s grant of a motion to dismiss de novo. R.M.A.

by Appleberry v. Blue Springs R-IV Sch. Dist., 568 S.W.3d 420, 424 (Mo. banc 2019); Coleman v.

Mo. Sec’y of State, 313 S.W.3d 148, 151 & n.4 (Mo. App. W.D. 2010) (reviewing de novo the

circuit court’s dismissal for failure to exhaust administrative remedies). “A motion to dismiss a

petition for a writ of mandamus for failure to state a cause of action, like any motion to dismiss

for failure to state a claim, is solely a test of the adequacy of the relator’s petition.” State ex rel.

 7
Cmty. Treatment, Inc. v. Mo. Comm’n on Human Rts., 561 S.W.3d 107, 111 (Mo. App. W.D. 2018)

(internal quotation marks omitted).

 “We will affirm a judgment of dismissal if it can be sustained on any ground supported by

the motion to dismiss, regardless of whether the trial court relied on that ground.” Clay Cnty.

Comm’n v. Galloway, 615 S.W.3d 856, 859-60 (Mo. App. W.D. 2020) (internal quotation marks

omitted). “In fact, if the court correctly dismissed the [action], the ground upon which the

dismissal is based is immaterial.” Id. at 860 (internal quotation marks omitted).

 Analysis6

 Petitioners assert two points on appeal, neither of which can prevail absent the Petitioners

establishing that they have no adequate remedy at law; stated another way, the Petitioners must

first exhaust their administrative remedies provided in chapters 137 and 138 of the Revised

Statutes of Missouri. Here, we conclude, they have not so exhausted their administrative remedies

and their appeal must thus fail.

 The administrative remedial process set out in chapters 137 and 138 is not merely a

procedural checklist prior to judicial review; instead, our Missouri Supreme Court has concluded

that “the complexities of the property tax law” is one that benefits from the State Tax

Commission’s expertise “with this specialized field” and, accordingly, the State Tax Commission

“should be given first opportunity to enforce the laws relating to the general property tax” and

 6
 Under article V, section 3 of the Missouri Constitution, the Missouri Supreme Court has exclusive
jurisdiction of questions regarding the construction of revenue laws of the State. The Missouri Supreme Court’s
“exclusive appellate jurisdiction extends only to the construction of laws affecting taxes deposited to the state
treasury.” Armstrong-Trotwood, 516 S.W.3d at 834. “A law that raises revenue only within a single political
subdivision for the benefit of that political subdivision . . . is not a revenue law ‘of the state.’” Id. (internal quotation
marks omitted). None of the taxes at issue here are paid to the state treasury, but, instead, are paid to Jackson County.
Therefore, this case does not involve the construction of revenue laws of the State and does not come within the
exclusive appellate jurisdiction of the Missouri Supreme Court.

 8
corresponding assessment issues. State ex rel. Cassilly v. Riney, 576 S.W.2d 325, 328-30 (Mo.

banc 1979).

 “Section 138.410 . . . places general supervision over all the assessing officers of this state

and over county boards of equalization in the State Tax Commission.” Cassilly, 576 S.W.2d at

328. Section 138.410.1 provides that:

 The commission shall exercise general supervision over all the assessing officers
 of this state, over county boards of equalization and appeal in the performance of
 their duties under this chapter and all other laws concerning the general property
 tax and shall institute proper proceedings to enforce the penalties and liabilities
 provided by law for public officers, officers of corporations and individuals failing
 to comply with the provisions of this chapter, and of all laws relating to the general
 property tax.

 The Missouri Supreme Court has concluded, from the explicit provisions of

section 138.410, “that the General Assembly intended that the State Tax Commission should be

given first opportunity to enforce the ‘laws relating to the general property tax[,]’” and “that the

public interest requires that the ‘experts’ be given an opportunity to attempt to resolve the difficult

problems presented in this case.” Id.

 In its opinion, the Cassilly court clarified that:

 Section 138.410 . . . makes it clear that the State Tax Commission has the duty,
 responsibility and right to exercise general supervision over all county assessing
 officers and the county boards of equalization, and is required by that section to
 enforce all the laws “relating to the general property tax.” In short, it is a primary
 duty of the State Tax Commission to exercise general supervisory power over
 county assessors and boards of equalization to the end that sec. 137.115.1 . . . and
 other general property tax laws are complied with by the assessors and boards of
 equalization. Section 138.415 makes it abundantly clear that the State Tax
 Commission has this responsibility as it specifically requires the commission to
 inquire into the methods of assessment and taxation and determine whether the
 assessing officers are discharging their duties as required by law, etc. To this end,
 the commission has powers commensurate with its responsibility and may issue
 orders designed to enforce the law. Under sec. 138.410.2 . . . the commission is not
 limited to calling upon the attorney general only to seek penalties but may call upon
 the attorney general “to represent the commission in any litigation which it may
 wish to institute or in which it may become involved in the discharge of its duties.”

 9
Id. at 330.

 Here, the claims of discriminatory assessment by Petitioners relating to the 2019

Assessment fall within the purview of the Board and the State Tax Commission. For, claims of

discriminatory assessment are expressly listed in section 138.430.1 as claims that shall be appealed

to the State Tax Commission.

 Clearly, then, the Petitioners have an adequate remedy at law in that “[t]he State Tax

Commission has the lawful authority to supervise all assessing officers and boards of equalization

and to exercise administrative powers with reference thereto and has the aid of the attorney general

to enforce in the courts the property tax laws of this state.” Id. As directed by Cassilly, “[t]he

primary duty to exercise this supervising authority is in the State Tax Commission rather than the

circuit courts.”7 Id. See also Sperry Corp. v. Wiles, 695 S.W.2d 471, 473 (Mo. banc 1985) (a

petitioner challenging an assessment as discriminatory must exhaust the remedies set forth in

chapters 137 and 138 prior to seeking court review); Westglen Vill. Assocs. v. Leachman, 654

S.W.2d 897, 899 (Mo. banc 1983) (“This statutory system for administrative review of assessments

may not be pre-empted by the courts” and petitioner was required to exhaust such statutory

administrative remedies—notwithstanding his characterization of his discrimination claim as an

 7
 Petitioners claim that they are unable to obtain relief before the State Tax Commission because the
Commission does not have the authority to effect intra-county equalization. We disagree. The State Tax
Commission’s “jurisdiction is derivative” of the county board of equalization when the Commission reviews appeals
from the county board. Armstrong-Trotwood, 516 S.W.3d at 837. “In other words, the [County Board] deals with
intra-county equalization, and the Commission, in hearing an appeal from a ruling of the Board, is limited to
considering issues of intra-county equalization.” Id. at 837-38 (internal quotation marks omitted).

 Petitioners also claim that the State Tax Commission declined to exercise any oversight powers when the
Jackson County legislature inquired regarding the reassessment process. This mischaracterizes the State Tax
Commission’s response, which simply outlined the steps in the process for determining the true value of property and
for contesting the determination of true value.

 We note that the Missouri Supreme Court has suggested, in dicta, that if the State Tax Commission does not
act within a reasonable time to resolve an assessment problem, a writ of mandamus against the State Tax Commission
may be sought. State ex rel. Cassilly v. Riney, 576 S.W.2d 325, 328 (Mo. banc 1979).

 10
equal protection claim—because the petitioner challenged “the method used to reach the

[assessor’s] result” and “methods of valuation of property are delegated to the expertise of

administrative agencies.”); Devinki v Takacs, 875 S.W.2d 648, 651 (Mo. App. W.D. 1994) (“[T]he

statutory scheme for redress of grievances associated with tax assessments [is] exclusive and

sounding a claim on the basis of § 1983 [does] not change that.”).

 Likewise, “[w]hen a declaratory judgment claim improperly invokes the [Declaratory

Judgment] Act because an adequate remedy already exists, the declaratory judgment claim fails to

state a cause of action.” Nichols v. McCarthy, 609 S.W.3d 483, 489 (Mo. App. E.D. 2020).8

 The circuit court did not err in concluding that Petitioners failed to exhaust available

administrative remedies, including review by the State Tax Commission, and in dismissing their

petition for declaratory judgment. No matter how important the substantive issues of

discriminatory assessment, there is an administrative process that our legislature and the Supreme

Court have admonished those in the shoes of Petitioners to follow; they have not and the circuit

court correctly concluded as such.

 Petitioners’ points on appeal are denied.

 8
 “Declaratory judgment, however, is not a general solution for all real and imagined legal ills, nor is it a
substitute for all existing remedies.” Nichols v. McCarthy, 609 S.W.3d 483, 489 (Mo. App. E.D. 2020). To state a
claim for a declaratory judgment:

 [T]he court must be presented with: (1) a justiciable controversy that presents a real, substantial,
 presently-existing controversy admitting of specific relief, as distinguished from an advisory decree
 upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, . . . ;
 (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law.

Mo. State Conf. of Nat’l Ass’n for Advancement of Colored People v. State, 601 S.W.3d 241, 246 (Mo. banc 2020)
(quoting Mo. Soybean Ass’n v. Mo. Clean Water Comm’n, 102 S.W.3d 10, 25 (Mo. banc 2003)) (emphasis added).

 11
 Conclusion

 The circuit court’s judgment is affirmed.

 /s/Mark D. Pfeiffer
 Mark D. Pfeiffer, Judge

Gary D. Witt and Anthony Rex Gabbert, Judges, concur.

 12