### PIERRE CHOUTEAU CONDOMINIUMS, Appellants,

v.

### STATE TAX COMMISSION, Respondent.

### No. 64868.

Supreme Court of Missouri,
En Banc.

Jan. 17, 1984.

David J. Newburger, Susan Spiegel, St. Louis, for appellants.

Edward J. Hanlon, James J. Wilson, St. Louis, for respondent.

DONNELLY, Judge.

This is an appeal from a judgment sustaining a decision of the State Tax Commission.

The Pierre Chouteau is a high-rise building located at 4440 Lindell Boulevard in the Central West End area of the City of St. Louis. In 1979, it was converted from an apartment-rental unit building to a condominium-ownership unit building. *See* Chapter 448, RSMo 1978.

The building was reassessed in 1980 pursuant to the provisions of § 448.100, Cum. Supp. RSMo 1982, which reads as follows:

> Real property taxes, special assessments, and any other special taxes or charges of the state of Missouri or of any political subdivision thereof, or other lawful taxing or assessing body, which are authorized by law to be assessed against and levied upon real property shall be assessed against and levied upon each unit and the owner's corresponding percentage of ownership in the common elements as a tract, and not upon the property as a whole.

Appellants are owners of 52 of the 61 condominium units. They allege discrimi-

natory treatment. *See Sioux City Bridge Co. v. Dakota County, Nebraska,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); *Breckenridge Hotels Corp. v. Leachman,* 571 S.W.2d 251 (Mo. banc 1978); and *Hopkins v. Odom,* 619 S.W.2d 857 (Mo.App. 1981). At the hearing before the Hearing Officer of the State Tax Commission, counsel summarized their position as follows:

> The members of the Pierre Chouteau Condominiums, generally became owners in residence of the condominium units involved in 1979. With the tax year, January 1, 1980, they received an assessment that was roughly twice the assessment of the units at the time that they acquired that property. They have asked, or have initiated the process through the Missouri Tax Law, to appeal the level at which they are assessed. They have not raised the question of the appraised value of their apartments within the condominium building. They have taken the position that the Assessor has singled them out, relative to other high rise apartment buildings, on the basis of the fact that this is a condominium apartment building, as opposed to an apartment building held for investment and rental services. It is our purpose today to present evidence that would show that the comparable level of assessment of similar buildings within the City, and particularly within the neighborhood of the Pierre Chouteau, is assessed at a considerably lower assessment, an assessment that is comparable to the normal assessed value of the condominium units prior to the reassessment. The question is that, in the exercise of the power of equalization, that the Commission recognize that this building is being assessed at a level that is roughly twice the prevailing assessment level for similar properties in similar circumstances, and that, therefore, the assessment is discriminatory, excessive, arbitrary and capricious.

The parties agree that the assessment for 1980 resulted from consideration of the Pierre Chouteau units as condominiums and not as rental apartments. The essential questions on appeal are whether this method of evaluation is permissible under the Equal Protection Clause of the United States Constitution (U.S. Const., amend. XIV, § 1) and the Uniformity Clause of the Constitution of Missouri (Mo. Const. art. X, § 3).

The Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

In *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 526–27, 79 S.Ct. 437, 440, 3 L.Ed.2d 480 (1959), we find the following:

> The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. * *

> But there is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." [Citations omitted.]

In 1980, Article X, § 3 of the Missouri Constitution provided that "[t]axes * * * shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." As amended in 1982, Article X, § 3 provides that "[t]axes * * * shall be uniform upon the same class

or subclass of subjects within the territorial limits of the authority levying the tax."

In *Cupples Hesse Corp. v. State Tax Commission,* 329 S.W.2d 696, 700 (Mo.1959), the applicable Missouri law was stated as follows:

At some expense in time and space, we reiterate here certain of the basic principles applicable to the review of assessments generally. There is no such thing in assessments as an absolute "true value," and an assessment is, at best, a mere estimate; a presumption exists that the assessed value is correct, and the courts have no right to substitute their judgments, as such, for the values fixed by the assessor or by reviewing boards. [Citations omitted.] [A]nd a taxpayer has the burden of establishing a discrimination. [Citation omitted.] A mere overvaluation of a specific property does not establish a discrimination in the absence of a showing of an intentional plan of discrimination or a showing that there is an undervaluation in the average assessment, or that other property generally is undervalued. [Citations omitted.] It is sometimes stated that the assessment of petitioner's property must, in the absence of an intentional plan or design of discrimination, be so grossly excessive "as to be entirely inconsistent with an honest exercise of judgment." [Citations omitted.]

The record in this case demonstrates that the assessments of the condominium units were based on their individual fair market value as established by the sales price. An equalization factor was then applied to bring the value down to the level of values in 1974 (when the area was last reassessed). In the view of the Commission, the assessments were not in any way discriminatory and "the reassessment of the subject building after the conversion to condominium was done in a proper and equitable manner." We agree. In our view, the respective clauses of the constitutions, as interpreted in *Allied Stores* and *Cupples Hesse, supra,* were not violated.

The judgment is affirmed.

WELLIVER, HIGGINS and BILLINGS, JJ., concur.

DONNELLY, J., concurs in separate opinion filed.

BLACKMAR, J., concurs in result in separate opinion filed.

RENDLEN, C.J., and GUNN, J., concur in result and concur in separate opinion of BLACKMAR, J.

DONNELLY, Judge, concurring.

"The writer of the Court's opinion" considers the implications of the opinion filed by Blackmar, J., "to be so disturbing as to require comment." *Wheeling Steel Corp. v. Glander,* 337 U.S. 562, 574, 69 S.Ct. 1291, 1298, 93 L.Ed. 1544 (1949) (Jackson, J., concurring); *Abbate v. United States,* 359 U.S. 187, 196, 79 S.Ct. 666, 671, 3 L.Ed.2d 729 (1959) (Brennan, J., concurring).

As the writer of the principal opinion in *State ex rel. Cassilly v. Riney,* 576 S.W.2d 325 (Mo. banc 1979), I wish to state that my brothers Rendlen, Gunn and Blackmar err egregiously when they presume to articulate in this case what the Court intended in *Cassilly.* The "bulling through a china shop" admonition *re* reassessment is as appropriate today as it was in 1979.

BLACKMAR, Judge, concurring in result.

Taxation of real estate is a controversial subject which has occupied a great deal of this Court's time over the years, without great progress in the resolution of recurring problems. Both the federal and state constitutions mandate equality in assessed valuation,[1] but equality is a relative term because there is no such thing as "true value" and any assessment is a mere estimate. *Cupples Hesse Corporation v. State Tax Commission,* 329 S.W.2d 696, 700 (Mo.1959). The judicial role, furthermore, is a limited

1. U.S. Const. amend. XIV, § 1; Mo. Const. art. X, § 1.

one. The courts are not capable of correcting all inequities in assessment.

When the apartment building in issue was converted to condominium ownership in 1979 the assessor, pursuant to the command of § 448.100, RSMo 1978, undertook to determine an assessed valuation for each individual unit. The assessment process began with the purchase price of the units, which is undoubtedly the best available indication of market value. The assessor then reduced the values determined by a factor of .763, calculated to represent the increase in value of the subject property between 1974 and 1980. This was done because property in the vicinity had last been assessed in 1974. The assessment was then calculated at one-third of the constructive 1974 valuation. The applicants do not challenge the values so calculated in the abstract. Their claim, rather, is that their property is overvalued with respect to other high-rise property in the area which has not been converted to condominium ownership.

The appellants introduced evidence that the neighborhood in which their property is located has numerous high-rise apartment buildings. An expert appraiser testified as to the comparability of these properties, and the record contains descriptions and illustrations which support his testimony. All these properties were reassessed in 1974. Those which converted to condominium ownership were reassessed; other properties were not. The record does not contain evidence as to the value of other condominium property in the area, but it does show that the aggregate assessed valuation of the appellants' property substantially exceeds the assessed valuation determined in 1974.

The Commission frankly holds that the assessor acted properly in taxing condominium property differently from other property, stating that different treatment is "statutorily mandated." It then holds that the appellant's proof is defective, first, in not showing the market value of comparable condominium property, and, second, in not

showing the market value of the high rise, non-condominium property which the appellants rely on for comparative purposes. The Commission upheld the sustention of a "directed verdict," in holding that the appellants did not make a case. It did not weigh the evidence or make a factual determination.

I question the Commission's holding, on both the facts and the law. It apparently sanctions the recognition of a subclass of residential property consisting of condominiums. This is contrary to law.[2] It would consider the form of ownership, which is questionable under the teaching of *Meadowbrook Country Club v. State Tax Commission*, 538 S.W.2d 310 (Mo.1976).

The Commission's factual assumptions are likewise questionable. The Assessor's 1974 valuations are presumed to be correct. Yet now it is claimed that the aggregate value of the appellants' property, adjusted to the 1974 market value, is greater than the value actually determined in 1974. The only thing shown to have happened in the interim is the conversion to condominium use. We do not have the benefit of the Commission's fact finding as to the $400,000 expended at the time the property was put up for sale in condominium units, but there are strong indications that the expenditures were for painting and other routine maintenance and not for structural improvements such as would affect the assessed valuation. Any claim that property is necessarily more valuable when sold as condominium units than if held for rental as apartments would seem to run counter to one of Euclid's axioms, which teaches that the whole is equal to the sum of its parts. It is also reasonable to assume that prospective purchasers of high-rise buildings, in determining what they are willing to pay, will consider the possibility of economic advantage in conversion to condominium usage.

I conclude, therefore, that there is evidence from which the Commission could have found discrimination. I do not say that the Commission was compelled to

---

2. *See* Mo. Const. art. X, § 4(a). *See also In re St. Joseph Lead Co.*, 352 S.W.2d 656, 663 (Mo. 1961) and *Drey v. State Tax Commission*, 345 S.W. 228, 237 (Mo.1961).

make this finding; only that it should not have sustained a motion to dismiss.

But it does not necessarily follow that the taxpayers are entitled to relief. We held in *Breckenridge Hotels Corporation v. Leachman,* 571 S.W.2d 251 (Mo. banc 1978), that a taxpayer states a claim for relief by asserting that new construction was assessed at a higher percentage of value than old property. It would follow that there is an invidious discrimination if condominium property is in fact assessed at a higher percentage of market value than virtually identical highrise property held for rental. But in *Drey v. State Tax Commission,* 345 S.W.2d 228 (Mo.1961) we recognized that courts are not equipped to set valuations, even if finding flaws in the assessor's procedures. And in *State ex rel. Cassilly v. Riney,* 576 S.W.2d 325 (Mo. banc 1979) we emphasized the authority and responsibility of the Commission in equalizing assessments, both inter-county and intra-county, while expressing our realization that perfect equalization cannot be achieved and updated instantaneously and that the assessors and the Commission should be afforded some measure of flexibility in the performance of their duties. I believe that *Cassilly* indicates that we should stay our hand.

There was perfect occasion to reassess the individual units constituting the appellants' property. There was no deliberate discrimination, even though there may have been some misapprehension of the law's requirements. The situation is similar to the reassessment of property containing new construction, which must be done quickly in order to serve the public interest. There is a tendency to allow the assessed valuation of other property to remain as it is. *Cassilly* teaches that the duty of reappraisal is constant and that it extends to property which has not changed in form just as much as to property which requires a new assessment. The Court has to assume that officers will do their duty and that they will make such adjustments as are necessary. In that case there was evidence of dilatoriness in reassessing other property, which seems to have troubled the Court. I do not find such indications in the present record.

It would not be appropriate, all things considered, to direct a rollback of the appellants' assessments.

I therefore join in the affirmance of the judgment.