ASSOCIATED INDUSTRIES OF MIS-
SOURI, et al.,
Plaintiffs-Respondents/Cross-Appellants,

v.

STATE TAX COMMISSION OF MIS-
SOURI, et al.,
Defendants-Appellants/Cross-Respondents.

F. George ALBERTUS, et al.,
Plaintiffs-Respondents,

v.

STATE TAX COMMISSION OF MIS-
SOURI, et al.,
Defendants-Appellants/Cross-Respondents,

and

Missouri Merchants & Manufacturers
Association, Inc.,
Intervenor-Defendant/Cross-Appellant.

No. 68671.

Supreme Court of Missouri,
En Banc.

Jan. 8, 1987.

Rehearing Denied Feb. 17, 1987.

Richard L. Schnake, Jerry L. Redfern, Springfield, for plaintiffs-respondents/cross-appellants.

William L. Webster, Atty. Gen., Richard L. Weiler, Asst. Atty. Gen., Jefferson City, Thomas R. Schwarz, Jr., State Tax Com'n, Jefferson City, for defendants-appellants/cross-respondents.

Duane Benton, Harvey M. Tettlebaum, Jefferson City, for intervenor-defendant/cross-appellant.

John Buechner, James C. Owen, Manchester, for plaintiffs-respondents.

Steven L. Wright, Columbia, for amicus curiae, Mo. School Boards Assoc.

BLACKMAR, Judge.

Individual and corporate taxpayers filed a declaratory judgment action, challenging the constitutionality of § 137.016, RSMo Supp.1984 classifying as residential "all real property improved by a structure ... which contains not more than four dwelling units...." By reason of this classification, the involved property is assessed at 19% of its fair market value, whereas other rental property is classified in the general classification and assessed at 32% of its value. The trial court held that the statute violated the due process and equal protection clauses of the Fourteenth Amendment of the U.S. Constitution and the "uniformity" clause of the Missouri Constitution, art. X, § 3, because it was arbitrary and unreasonable, and that it established a prohibited subclass of real property, in violation of art. X, § 4(b) of the Missouri Constitution. We conclude that the statute is not shown to be arbitrary or capricious and that the challenges have failed to overcome the presumption of constitutionality. We therefore reverse and remand for the entry of a declaratory judgment sustaining the validity of the statute against the challenges made.

In 1982, art. X, § 4(b) of the Missouri Constitution was amended to permit the establishment of three subclasses of real property. The amended provision reads as follows:

Property in classes 1 [real property] and 2 [tangible personal property] and subclasses of those classes, shall be assessed for tax purposes at its value or such percentage of its value as may be fixed by law for each class and for each subclass. Property in class 3 and its subclasses shall be taxed only to the extent authorized and at the rate fixed by law for each class and subclass, and the tax shall be based on the annual yield and shall not exceed eight percent thereof. Property in class 1 shall be subclassed in the following classifications:

(1) Residential property;

(2) Agricultural and horticultural property;

(3) Utility, industrial, commercial, railroad and all other property not included in subclasses (1) and (2) of class 1. Property in the subclasses of class 1 may be defined by law, however subclasses (1), (2), and (3) shall not be further divided, provided, land in subclass (2) may by general law be assessed for tax purposes on its productive capability. The same percentage of value shall be applied to all properties within any subclass. No classes or subclasses shall have a percentage of its true value in money in excess of thirty-three and one-third percent.

The legislature then adopted the following statute (§ 137.016.1(1)):

As used in section 4(b) of article X of the Missouri Constitution, the following terms mean:

(1) **"Residential property"**, all real property improved by a structure which is used or intended to be used for residential living by human occupants and which contains not more than four dwelling units or which contains single dwelling units owned as a condominium or in a cooperative housing association. ...

Several taxpayers filed a declaratory judgment suit, asserting that the statute was unconstitutional on grounds as set out above. Other taxpayers intervened. The trial court upheld the challenges. The

State Tax Commission appealed, as did some taxpayers who contended that the relief awarded by the circuit court was not appropriate. We have jurisdiction under art. V, § 3 of the Missouri Constitution, because the case involves the construction of the revenue laws of the state.

■ The fact that our Constitution and statutes permit the establishment of subclasses of real property, and provide for different rates of assessment of property in different subclasses, does not demonstrate a constitutional violation under either the due process or equal protection clauses of the Fourteenth Amendment of the United States Constitution. *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959); *Pacific Express Co. v. Seibert,* 142 U.S. 339, 12 S.Ct. 250, 35 L.Ed. 1035 (1892); *Bell's Gap Railroad Company v. Pennsylvania,* 134 U.S. 232, 10 S.Ct. 533, 33 L.Ed. 892 (1890). The plaintiffs do not make their case simply by showing that different classes of real property are assessed at different rates.

They argue, however, that the "rule of four" is wholly arbitrary and without reason, citing such cases as *State ex rel. Transport Manufacturing & Equipment Co. v. Bates,* 359 Mo. 1002, 224 S.W.2d 996 (banc 1949) (portion of statute exempting from use tax motor vehicles seating ten passengers or more held invalid as violating uniformity clause, Mo. Const. art. 10, § 3); *Airway Drive-In Theatre Co. v. City of St. Ann,* 354 S.W.2d 858 (Mo. banc 1962) (portion of ordinance levying annual license tax on drive-in theaters at $1.50 per speaker and on other motion picture theaters at $50.00 per year, resulting in drive-ins being taxed 17 to 30 times greater than motion picture theaters, held arbitrary and abuse of taxing power); *State ex rel. Garth v. Switzler,* 143 Mo. 287, 45 S.W. 245 (banc 1898) (law imposing inheritance tax at rate of five percent for property valued under $10,000, whereas rate was seven and one-half percent on value of estate in excess of $10,000, held unconstitutional).

We do not agree. Statutes are presumed to be constitutional until the contrary is shown. Every indulgence must be made in favor of the legislature's handiwork. Classifications based on number have often been sustained. *Bopp v. Spainhower,* 519 S.W.2d 281 (Mo. banc 1975) (reasonable basis exists for statute which allows majority of governing body of a city not within a county, a first-class county operating under charter and not containing a city of over 400,000 inhabitants and any city of 400,000 inhabitants within a first-class county to impose sales tax for transportation purposes without voter approval, whereas any other city with 500 or more inhabitants must obtain voter approval before levying tax); *Crane v. Riehn,* 568 S.W.2d 525 (Mo. banc 1978) (statute under which spouse and minor children of a decedent who is survived by one or both parents must bring wrongful death suit within one year, though spouse and minor children of a decedent not survived by a parent have two years in which to bring suit, held constitutional); *Collins v. Director of Revenue,* 691 S.W.2d 246 (Mo. banc 1985) (summary license suspension statute which allows for conviction of violators of drunk driving laws with blood alcohol content of .13 percent, rather than .10 percent required for misdemeanor conviction, held not arbitrary or capricious).

■ Rental housing has both residential and commercial aspects. The legislature might appropriately conclude that the commercial aspect predominates for buildings containing numerous units, whereas those containing only a few units have a predominantly residential character. It might conclude that the selection of a definite figure, such as four, offered the most effective means of classifying rental property into residential and commercial categories. There might be reluctance to burden the owner of a small complex with commercial taxes, which necessarily will be passed on to the tenants. Larger units, however, might be expected to bear the commercial rate. We are unable to say that the legislature's choice lacked any rational basis.

The cases relied on, then, are distinguishable.

Our conclusion is not changed because some elaborate "fourplexes" may bear all indicia of being commercial property. The legislature's judgment as to the overall picture must be respected. It should also be the function of the legislature to look for abuses and evasions of the governing principle and to take action if deemed appropriate. Perfect equity in the assessment of real property cannot be expected. The present constitutional and statutory provisions, coupled with state-wide reassessment, have the potential for relative equality of assessment of similarly classified property.

*State ex rel. Transport Manufacturing and Equipment Co. v. Bates, supra,* is characteristic of the cases holding that a taxing statute may be rendered unconstitutional by the presence of a wholly arbitrary exclusion or exemption. There a statute imposing use taxes on vehicles acquired out of the state did not apply by its terms to vehicles designed for 10 or more passengers. The court saw no rhyme or reason for the exclusion, and invalidated the statute. This case is distinguishable because the legislature might have concluded that there was a qualitative as well as a quantitative difference between smaller and larger housing complexes. It is of no moment that we as legislators might not have made the same choice.

■ The statute does not create a prohibited additional subclass of real property. Its purpose, rather, is to allocate rental property between two of the constitutionally approved subclasses. This allocation is within the power of the legislature, unless shown to be arbitrary or unreasonable.

Judge Donnelly points to the restrictions on classification of tangible and intangible personal property as set out in art. X, § 4(a) of the Constitution of 1945, and would apply these restrictions to the classification of real property. They are not made so applicable in the Constitution of 1945 or in the 1982 amendment to art. X, § 4(b). What the minutes of the 1945 convention show is that the members felt that, by allowing some classification of property for assessment purposes, it would be easier to obtain realistic valuations. The convention was not willing to permit subclassification of real property, but the 1982 amendment does so. It is the product of a long struggle to achieve greater uniformity in actual tax incidence. *See State ex rel. Cassilly v. Riney,* 576 S.W.2d 325 (Mo. banc 1979); *Breckenridge Hotels Corp. v. Leachman,* 571 S.W.2d 251 (Mo. banc 1978); *Pierre Chouteau Condominiums v. State Tax Commission,* 662 S.W.2d 513 (Mo. banc 1984).

We do not disagree with Judge Welliver's assertion that real estate taxes on rental property may ultimately be borne by the tenants. By the same token, taxes on commercial property are ultimately borne by the general public. The problem he points to is inherent in the permissible classification of real property for tax purposes. It does not necessarily follow that the normal renter has a more severe tax burden than the normal homeowner. The classifying decision was made by the legislature, with its superior means of information about the effects of legislation on the public, and for the reasons stated we are not persuaded that it exceeded the authority conferred by the amended art. X, § 4(b), or that its choice was otherwise constitutionally infirm.

The case presents no disputed issues of fact and is appropriate for final judgment. We do not have to decide any question of the appropriateness of the relief the trial court granted, because we conclude that the plaintiffs are not entitled to any of the relief they seek.

The judgment is reversed and the case remanded with directions to declare that the statute is not shown to be unconstitutional on any of the grounds assigned.

HIGGINS, C.J., and MORGAN, Senior Judge, concur.

ROBERTSON, J., concurs in separate opinion filed.

DONNELLY, J., dissents in separate opinion filed.

RENDLEN, J., dissents in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed and concurs in separate dissenting opinions of DONNELLY and RENDLEN, JJ.

BILLINGS, J., not sitting.

ROBERTSON, Judge, concurring.

I completely concur in the principal opinion. I write separately for the purpose of explaining why the rather winsome arguments of the dissenters do not persuade me, despite my personal agreement with the result the dissenters reach.

The discussion of the constitutional debates found in Judge Donnelly's dissent provides an interesting historic aside to the issues before the Court in this case. However, this Court has long held that " '[i]t is, of course, fundamental that where the language of a statute is plain and admits of but one meaning there is no room for construction.' This rule applies with equal force to constitutional provisions." *Rathjen v. Reorganized School District R–II of Shelby County*, 365 Mo. 518, 284 S.W.2d 516, 517, 523 (banc 1955) quoting *Cummins v. Kansas City Public Service Co.*, 334 Mo. 672, 66 S.W.2d 920, 931 (banc 1933).

Were there some ambiguity in the constitutional language, we would be clearly justified in consulting the minutes of the Constitutional Convention for their persuasive, though not binding, effect. *Metal Form Corp. v. Leachman*, 599 S.W.2d 922, 926 (Mo. banc 1980). However, Mo. Const. art. X, § 4(a) is not ambiguous. It provides in pertinent part that the General Assembly may "provide for further classification within classes 2 [tangible personal property] and 3 [intangible personal property], based solely on the nature and characteristics of the property, and not on the nature, residence or business of the owner, or the amount owned...." [Emphasis added]. No reference is made to real property in the pertinent sentence.

The fact that § 4(a) does not discuss the subclassification of real property is consistent with the debates. Delegates to the convention thought that "a great many people in Missouri had a great deal of fear that it [subclassification] ought not to apply to real estate." Tr. of Debates of Mo. Const., 1945, page 6306. Such subclassification was, therefore, not under active consideration at the time of the debates. With the 1982 amendment to Mo. Const. art. X, § 4(b), the people of Missouri, contrary to the fears expressed on their behalf at the 1945 Constitutional Convention, and contrary to any discussion about the subclassification of real estate which may have taken place at that convention, chose to allow the subclassification of real estate for tax purposes in Missouri.

A second canon of constitutional construction must be noted. "This Court has recognized that in the construction of constitutional provisions it should undertake to ascribe to words the meaning which the people understood them to have when the provision was adopted." *State ex rel. Danforth v. Cason*, 507 S.W.2d 405, 408 (Mo. banc 1973). Based on the plain language submitted to the voters approving the 1945 Constitution, there can be little doubt that the makers [1] of our Constitution—the people—while approving the subclassification of class 2 and 3 property, formed no intent with regard to the subclassification of real property.

---

1. "Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them with the help of common sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss." *State v. Adkins*, 284 Mo. 680, 225 S.W. 981, 984 (1920) (Williamson, J. concurring) quoting 1 Story, Constitution, § 451.

I cannot agree that § 4(a) contains a "base line" with regard to class one property. The "base line" which § 4(a) provides is limited by its own terms to property in classes 2 and 3; real property is not discussed. Thus, it is only by the surgical excision of the constitutional references to Class 2 and Class 3 property that such a "base line" can be found.

Nor, in my view, is there a need to harmonize § 4(a) and § 4(b). There is no conflict between the sections. To repeat, § 4(b) provides for subclassification of real property; § 4(a) does not consider that subject.

Even if one assumes for the sake of argument, that the General Assembly is restricted by the language of § 4(a), the issue presented in this case is not resolved. Real property developed as apartments partakes of a dual nature. Like commercial property, it produces income; like residential property it provides shelter. Thus, apartments are both residential and commercial.[2] In the presence of this dual nature, I am unwilling to say that the General Assembly violated the constitution by choosing to define the primary nature of larger apartment complexes as commercial.

Nor does § 137.016.1 violate equal protection and due process, U.S. Const. Amend. XIV, or the uniformity clause of Mo. Const. art. X, § 3. An act of the legislature enjoys a presumption of constitutionality. It will not be declared unconstitutional unless it clearly and undoubtedly contravenes the Constitution. *Prokopf v. Whaley*, 592 S.W.2d 819, 824 (Mo. banc 1980). Further, the legislature is granted a broad discretion and wide latitude in constructing its classifications for taxation. *Lockport v. Citizens for Community Action*, 430 U.S. 259, 272, 97 S.Ct. 1047, 1055, 51 L.Ed.2d 313 (1977); *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973). "[I]n taxation, even more than in other fields, legislatures possess the great-

est freedom in classification." *Madden v. Kentucky*, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940).

Respondents do not claim that this case involves a fundamental right or invidious class discrimination. Thus, as Judge Rendlen appropriately notes in his dissent, the proper standard of review under the equal protection clause, the due process clause, and the uniformity clause is that the tax classifications established by the legislature have a rational basis; they cannot be palpably arbitrary. *State ex rel. Transport Manufacturing and Equipment Co. v. Bates*, 359 Mo. 1002, 224 S.W.2d 996, 1000 (banc 1949); *Bridges Asphalt Co. v. Jacobsmeyer*, 346 Mo. 609, 142 S.W.2d 641, 643 (1940); *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959).

Is there a legitimate state end? No one challenges the legitimacy of the State exercising its taxing power through the imposition of ad valorem taxes on real property. Thus, the constitutional challenge turns on whether the classifications created by the legislature are rationally related to the State's interests in taxation.

It is argued that apartments are purely residential. Yet, as has already been discussed, apartments have an undeniably commercial aspect. Thus, in my view, the legislature would have been justified in classifying all apartment property as commercial property.

The more thoughtful argument challenges the distinction drawn by the General Assembly between apartment property containing four or fewer units and apartment complexes containing five or more units. Does this distinction have a rational basis? As the principal opinion correctly holds, the distinction drawn by the legislature may have been based on the legislature's understanding that those "complexes" containing four or fewer units, because of their lack of size, are not truly commercial; such property may also have been developed for

2. The same can be said of a hotel, which provides an overnight (or longer) residence to its residents and income to its owner. In my opin-

ion, it would be difficult to sustain an argument that a hotel is not commercial in nature, however.

the purpose of providing housing for the extended family of the owner. These rationales are sufficient to ward off this constitutional challenge.[3] As the principal opinion indicates, the cases upon which Judge Rendlen's dissent relies for the proposition that this statute is unconstitutional are distinguishable.

As I have already confessed, I disagree with the policy choice made by the General Assembly. The temptation we face as judges, when equal protection is invoked, is to assume that any policy choice with which we disagree is irrational and therefore in violation of the Constitution. To succumb to the temptation to substitute our chosen policy for that adopted by the elected representatives of the people is, however, to confuse power with authority. The fact that our system of government entrusts us with the power to declare an act of the legislature unconstitutional does not mean that we can exercise that power to effectuate *our* policy choices, absent a violation of the Constitution. The fact that the General Assembly's decision may be considered odd by us, does not, in my view, also render it unconstitutional.

[A] court is not free under the aegis of the Equal Protection Clause to substitute its judgment for the will of the people of a State as expressed in laws passed by their popularly elected legislatures. "The Constitution presumes that, absent some reasons to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Vance v. Bradley,* 440 U.S. [93], 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 [ (1979) ].

*Parham v. Hughes,* 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979).

---

**3.** The fact that clever apartment developers may defeat the commercial designation of their property under § 137.016.1 by dividing larger complexes into separate ownership for each four apartments does not require a different result.

**1.** As used in § 4(b) of art. X of the Missouri Constitution, the following terms mean:

---

DONNELLY, Judge, dissenting.

It is imperative that the constitutionality of § 137.016.1(1)[1] be resolved only after a close examination of the history of property classification in Missouri. As this Court recently noted in *Metal Form Corp. v. Leachman,* 599 S.W.2d 922, 925 (Mo. banc 1980),

[T]here was no right to classify property for tax purposes before adoption of the 1945 Constitution. Art. X, § 4 of the 1875 Constitution provided that "[A]ll property subject to taxation shall be taxed in proportion to its value." That provision was interpreted in several cases by this court to place all taxable property into a single class and to prohibit the legislature from dividing the property into different classes for purposes of taxation. [citations omitted]

Missouri was one of the last states to adopt some form of property classification when it added art. X, § 4(a) to the Constitution in 1945. Art. X, § 4(a)[2], permitted classification for tax purposes as follows:

All taxable property shall be classified for tax purposes as follows: class 1, real property; class 2, tangible personal property; class 3, intangible personal property. *The general assembly, by general law, may provide for further classification within classes 2 and 3, based solely on the nature and characteristics of the property, and not on the nature, residence or business of the owner, or the amount owned....* [emphasis added]

Furthermore, § 4(b) of the 1945 Constitution provided:

Property in classes 1 and 2 and subclasses of class 2 shall be assessed for tax purposes at its value or such percentage of its value as may be fixed by law for each class and for each subclass of class

---

(1) "Residential property," all real property improved by a structure which is used or intended to be used for residential living by human occupants and which contains not more than four dwelling units or which contains single dwelling units owned as a condominium or in a cooperative housing association.

**2.** Art. X, § 4(a) remains unchanged today.

2. Property in class 3 and its subclasses shall be taxed only to the extent authorized and at the rate fixed by law for each class and subclass, and the tax shall be based on the annual yield and shall not exceed eight per cent thereof.

In 1982, § 4(b) was amended in a special election by adding the following:

> Property in class 1 shall be subclassed in the following classifications:
>
> (1) Residential property;
>
> (2) Agricultural and horticultural property;
>
> (3) Utility, industrial, commercial, railroad, and all other property not included in subclasses (1) and (2) of class 1.
>
> Property in the subclasses of class 1 may be defined by law, however subclasses (1), (2), and (3) shall not be further divided, provided, land in subclass (2) may by general law be assessed for tax purposes on its productive capability....

Article X, § 4, by the use of a classification scheme, was the culmination of many years of effort to achieve equality in taxation among the various types of property. This section was thought of as "the most important section" of Article X because of the prior inequities in the Missouri tax system. Transcript of the Debates of the Missouri Constitution 1945, p. 7471 (hereinafter Debates). Before the adoption of § 4(a), the burden of financing local governments in this State fell squarely on the shoulders of real property owners. The importance of this section was also exemplified by the separate consideration and lengthy discussion it was given in the constitutional convention. However, a statement of the ultimate goal of the framers does not provide any answers to the questions raised by the legislature's attempt to statutorily distinguish between residential and commercial property as is suggested by the principal opinion.

It is a well-established rule that constitutional provisions must be construed as a whole so as not to destroy the general intent and purpose of the framers. *State at the Information of Martin v. City of Independence,* 518 S.W.2d 63, 66 (Mo. 1974). In doing so, it is permissible to consult the proceedings and debates of the framers. *Leachman, supra,* at p. 926. Moreover, this Court must give due regard to the primary objectives of the provision under scrutiny as viewed in harmony with all related provisions, considered as a whole, *Roberts v. McNary,* 636 S.W.2d 332, 335 (Mo. banc 1982). Thus § 4(b) must be harmonized consistent with § 4 as a whole.

In the 1943–44 constitutional convention, the debate over property classification centered on this question: To which classes of property would certain restrictive language in § 4(a) apply? This language was commonly referred to as the "Shepley Amendment." [3] Essentially, it provides that legislative classification of tangible and intangible personal property is limited to the "nature and characteristics of the *property*," and does not extend to the incidents of ownership.

The original committee report expressly applied the restrictions to *all* three classes of property, but later the restrictions were removed as to class 1. The framers gave several reasons for not expressly applying the restrictions of § 4(a) to the real property class. Perhaps the most important reason was an explicit fear that if real property classification was attempted by the legislature, there would be an "internal war" and particular properties would be singled out for inequitable treatment as a consequence. For example, "the brewer was afraid they would pick out the brewers' real estate. The railroad was afraid [they] would pick out the railroads' real estate. *Some apartment owners were afraid [they] would pick out apartment buildings....*" (Emphasis added.) *Debates,* p. 6305–06.

Another reason, as expressed by the author of the amendment, was that there was really no need for real property subclassifi-

---

**3.** "The general assembly by general law, may provide for further classification within classes 2 and 3, based solely on the nature and charac-

teristics of the property, and not on the nature, residence or business of the owner, or the amount owned...."

cation in Missouri as evidenced by the experiences of other states which had adopted similar classification systems. Mr. Shepley stated:

> [W]e could find in Missouri, no other state where the subclassification of real estate has amounted to very much. There doesn't seem to be very much justification for it because all real estate is dependent upon the services of local government. That varies with personal property depending upon the type of personal property and there is justification for distinguishing between those that require more than those that require the less service.

*Debates,* p. 6309.

The final reason given was that it was unnecessary to further apply the restrictions of § 4(a) because it was believed that the courts of this State would never "permit a classification to be based upon ownership or owned property." *Debates,* p. 6311.

The principal opinion does not, and cannot, deny that art. X, § 4(b) contains no basis for "defining by law" which property falls within the subclasses of class 1. The only baseline is contained in art. X, § 4(a): "The general assembly, by general law, may provide for further classifications ... based solely on the nature and characteristics of the property, and not on the nature, residence or business of the owner, or the amount owned." *Id.* The constitutional debates are unequivocal reference whether this standard would have applied to class 1 property. *Debates,* pp. 6305–06. Constitutional provisions speaking to the same subject, here classifications for tax assessment, must be construed as a whole. What the principal opinion holds, essentially, is that the legislature of this State may accomplish by referendum what is prohibited by the product of constitutional convention.

In my view, *only* agricultural and horticultural property in subclass (2) may be assessed on its productive capability under § 4(b). The principal opinion misconstrues § 4(b) and holds, in effect, that *residential* property in subclass (1) "may by general

law be assessed for tax purposes on its productive capability."

Those provisions of § 137.016.1 which define the type of real property at issue in terms of the owner's business and the amount owned are unconstitutional and should be excised.

I respectfully dissent.

RENDLEN, Judge, dissenting.

I respectfully dissent.

By the terms of §§ 137.016.1, RSMo Cum.Supp.1984, and 137.115.5, RSMo Supp. 1985, real property improved by a residential structure containing not more than four dwelling units is "residential property" and is assessed at nineteen percent of its true value, while real property improved by a residential structure containing five or more dwelling units is within the subclass of "utility, industrial, commercial, and railroad property" and is assessed at thirty-two percent of its true value. The legislature is empowered to define the three subclasses of real property, (1) "residential property," (2) "agricultural and horticultural property," and (3) "utility, industrial, commercial, railroad, and all other property not included in subclasses (1) and (2)." Mo. Const. art. X, § 4(b). However, the legislature's discretion to so define is not unfettered for there are constitutional limitations upon the legislature's authority to classify property for purposes of taxation.

For the reasons stated by Judge Donnelly in his dissenting opinion, Mo. Const. art. X, §§ 4(a) and 4(b) must be read together. Thus through its efforts to "define" property in the three subclasses of real property, Mo. Const. art. X, § 4(b), the legislature must classify property "based solely on the nature and characteristics of the property, and not on the nature, residence or business of the owner, or the amount owned." Mo. Const. art. X, § 4(a). The challenged classifications fail this requirement. Additionally, § 137.016.1(1), in distinguishing residential structures based upon whether they contain "not more than four dwelling units," is further division in direct contradiction to the constitutional prohibition, Mo.

Const. art. X, § 4(b), that "subclasses (1), (2), and (3) shall not be further divided."

Furthermore, there appears no rational basis for the distinction for tax purposes between residential structures containing four dwelling units and those containing five, and it therefore violates equal protection and due process, U.S. Const. amend. XIV, and the uniformity clause of Mo. Const. art. X, § 3. The "uniformity clause" of Mo. Const. art. X, § 3, requires that classification of property for purposes of taxation not be "palpably arbitrary." *State ex rel. Transport Manufacturing & Equipment Co. v. Bates*, 359 Mo. 1002, 224 S.W.2d 996, 1000 (banc 1949).

> [W]hile the General Assembly may enact statutes applicable to and classifying certain persons or property for taxation purposes yet such classification must include all persons or objects naturally falling within the class. Constitutional class taxation must include within the established class all who belong in it and must exclude all who do not belong in it. All in each natural class must be taxed or exempted alike. A natural class may not be split.

*Id.* Similarly, due process requires that taxes not be based upon a "palpably arbitrary" plan, *Bridges Asphalt Co. v. Jacobsmeyer*, 346 Mo. 609, 142 S.W.2d 641, 643 (1940), and equal protection demands that classifications made for purposes of taxation have a "rational basis" and not be "palpably arbitrary." *Allied Stores, Inc. v. Bowers*, 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959).

As conceded by the principal opinion, we previously have struck down classifications for which there were no rational bases. In *State ex rel. Transport Manufacturing & Equipment Co. v. Bates*, 359 Mo. 1002, 224 S.W.2d 996, 1000–1001, we held unconstitutional a motor vehicle use tax levied upon those with a seating capacity of not more than nine passengers but not upon those having a seating capacity of ten or more, concluding that the distinction was "without reason or rational basis." Similarly, in *Airway Drive-In Theatre Co. v. City of St.*

*Ann*, 354 S.W.2d 858, 860–62 (Mo. banc 1962), we held unconstitutional an annual license tax of $1.50 per speaker levied upon drive-in theaters where indoor theaters were taxed at the flat rate of $50 per year, concluding that the distinction was "arbitrary, unreasonable and without substantial justification." In *State ex rel. Garth v. Switzler*, 143 Mo. 287, 45 S.W. 245, 252–54 (1898), this Court held unconstitutional a law intending to impose a "collateral succession tax" of 5% on property valued up to $10,000 but an additional 7½% tax on property in excess of $10,000, concluding such to be "an arbitrary classification, without rhyme or reason." Additionally, in *City of St. Louis v. Spiegel*, 75 Mo. 145, 147 (1881), we held unconstitutionally discriminatory a "meat-shop ordinance" imposing a $25 tax in one part of the city and a $100 tax in another part. Similarly in the case sub judice, I discern no rational basis for taxing differently buildings with not more than four dwelling units and those with five or more. Such classification for tax purposes is "palpably arbitrary." The vague rationales hypothesized by the defendants and the principal opinion for classifying a building of four units as "residential" property but one of five units as "commercial" leave me wholly unpersuaded. The property, whether four units or five, falls within the same natural class.

The numerical classifications sustained in the cases relied upon by the principal opinion, *Collins v. Director of Revenue*, 691 S.W.2d 246 (Mo. banc 1985); *Crane v. Riehn*, 568 S.W.2d 525 (Mo. banc 1978); *Bopp v. Spainhower*, 519 S.W.2d 281 (Mo. banc 1975), are readily distinguishable from the present. In *Collins*, 691 S.W.2d at 249–50, appellants challenged the statutory scheme for the summary suspension of driving privileges as violative of equal protection, contending that the separate classification for persons with a blood alcohol content of .13 percent or greater was arbitrary and capricious in view of the legislative presumption that persons with a blood alcohol content of at least .10 percent are intoxicated. We rejected the claim, concluding that, because it is "clear that

the proportion of people whose driving ability is impaired and the extent of that impairment rises with increasing blood-alcohol levels," "there exists some 'reasonable basis' for the legislative classification." *Id.* at 250. However it is not at all so clear that multi-unit dwelling structures transform from residential to commercial property as the number of units increases from four to five. In *Crane*, 568 S.W.2d at 527–30, we rejected plaintiffs' equal protection challenge to a statute requiring the spouse and minor children of a decedent survived by a parent to bring a wrongful death action within one year of decedent's death even though the spouse and minor children of a decedent not survived by a parent had two years in which to bring a wrongful death action. But in *Crane*, unlike in the present case, there was a rational basis for treating the two classes differently since where decedent was survived by parent as well as by spouse or minor children the claim passed to the parents of the decedent if the spouse and minor children failed to sue within the one-year period. *Id.* Finally, in *Bopp*, 519 S.W.2d at 286–89, we rejected plaintiff's equal protection challenge to a statute allowing a city not within a county, a first-class county operating under charter and not containing a city or part of a city of over 400,000 inhabitants, and any city of 400,000 inhabitants wholly or partially within a first-class county to levy a sales tax for transportation purposes without voter approval, though any other city with a population of 500 or more could levy a tax only upon voter approval. There, unlike here, a rational basis existed for the classification, *i.e.*, the more acute public transportation problems found in large metropolitan areas. *Id.*

For the reasons stated, I would affirm the trial court's judgment.

WELLIVER, Judge, dissenting.

I respectfully dissent.[1]

If there is but one thing I have learned in the judiciary, it is that a principal opinion which cannot stand as written without later purporting to answer the dissents which it invites is an opinion flawed from the beginning.

The time has come for government at all levels to get honest with the people. This also applies to the judicial branch. There is no excuse for the judiciary hiding either its own acts or the acts of the executive or legislative branches behind high-sounding legal phrases. I refer to the use of very legal sounding phrases, such as: "the statute is not shown to be arbitrary or capricious," "the challenges have failed to overcome the presumption of constitutionality," "statutes are presumed to be constitutional until the contrary is shown," "every indulgence must be made in favor of the legislature's handiwork," or "we are unable to say that the legislature's choice lacked any rational basis," all appearing in the principal opinion.

---

1. My brother, Robertson, J., in his concurring opinion, has stated: "I write separately for the purpose of explaining why the rather winsome arguments of the dissenters do not persuade me, despite my personal agreement with the result the dissenters reach."

The Oxford English Dictionary defines "winsome" to be "1. pleasant, delightful, agreeable," "3. Pleasing or attractive in appearance, handsome, comely; of attractive nature or disposition, of winning character or manners," and "4. Cheerful, joyous, gay." 12 Oxford English Dictionary 180 (2d ed. 1961). "Winsome" means "winning; charming; engaging." The American Heritage Dictionary 1469 (1970). Webster's defines "winsome" as "causing joy or pleasure: AGREEABLE, PLEASANT, WINNING." Webster's Third New International Dictionary 2622 (4th ed. 1976).

"Winsome" is synonymous to "winning," "agreeable," "alluring," "likable," "delightful," "cheerful," "courteous," "winning," "engaging," "charming," "pleasing," "enjoyable," "exquisite," "fair," "pretty," "handsome," "graceful," "delectable," "elegant," "prepossessing," and "refined." Roget's Thesaurus 1177 (3d ed. 1946); J. Rodale, *The Synonym Finder* 1346 (1978).

It is difficult for me to understand how one so politically oriented could in one breath find the arguments of my brothers Donnelly and Rendlen, JJ., so "winning," "agreeable," "attractive," "pleasing," "alluring," "engaging," "fair," and "refined," and in the next breath publicly state that they are unpersuasive. It is even more difficult for me to understand how he agrees with the dissenters' result and yet concurs in the result reached by the principal opinion.

One cannot dispute that the primary obligation of all courts to the people is that, in construing constitutions, statutes, instruments, or documents, the words used by the drafters should be given their clear, plain and unambiguous meaning. No one could state the rule better than Robertson, J., (concurring herein) where he states "'[i]t is, of course, fundamental that where the language of a statute is plain and admits of but one meaning there is no room for construction.' This rule applies with equal force to constitutional provisions.'" (Citations omitted.) If there is found to be an ambiguity or conflict in the words used in any of these, the courts then resort to the long-accepted rules and presumptions of interpretation and construction utilized by prior courts in arriving at what was meant by the persons who used the ambiguous words in question.

There is only one issue: is there a clear, unambiguous meaning to the words of Article X, Section 4(b) of the Missouri Constitution, or, is there a conflict and ambiguity which the Court is required to resolve?

The words in question used in this case were chosen by the elected representatives of the people of Missouri and approved by the people to amend their constitution. Mo. Const. art. X, § 4(b). So that there can be no accusation of misrepresentation of those words, they are set forth in full, together with those of preexisting section 4(a) of Article X of the Missouri Constitution, with the words particularly applicable to this case underlined.

**Section 4(a). Classification of taxable property—taxes on franchises, incomes, excises and licenses.** *All taxable property shall be classified for tax purposes as follows: class 1, real property; class 2, tangible personal property; class 3, intangible personal property. The general assembly, by general law, may provide for further classification within classes 2 and 3, based solely on the nature and characteristics of the property, and not on the nature, residence or business of the owner, or the amount owned.* Nothing in this section shall prevent the taxing of franchises, privileges or incomes, or the levying of excise or motor vehicle license taxes, or any other taxes of the same or different types.

Mo. Const. art. X, § 4(a) (emphasis added).

**Section 4(b). Basis of assessment of tangible property—real property—taxation of intangibles—limitations.—**Property in classes 1 and 2 and subclasses of those classes, shall be assessed for tax purposes at its value or such percentage of its value as may be fixed by law for each class and for each subclass. Property in class 3 and its subclasses shall be taxed only to the extent authorized and at the rate fixed by law for each class and subclass, and the tax shall be based on the annual yield and shall not exceed eight percent thereof. *Property in class 1 shall be subclassed in the following classifications:*

*(1) Residential property;*

*(2) Agricultural and horticultural property;*

*(3) Utility, industrial, commercial, railroad, and all other property not included in subclasses (1) and (2) of class 1.*

*Property in the subclasses of class 1 may be defined by law, however subclasses (1), (2), and (3) shall not be further divided, provided, land in subclass (2) may by general law be assessed for tax purposes on its productive capability.* The same percentage of value shall be applied to all properties within any subclass. No classes or subclass shall have a percentage of its true value in money in excess of thirty-three and one-third percent.

Mo. Const. art. X, § 4(b) (proposed by Mo. Laws 1982, p. 734; adopted at special election of August 3, 1982) (emphasis added).

The Constitution of 1875 provided that "All property subject to taxation shall be taxed in proportion to its value." Mo. Const. of 1875, art. X, § 4. This was an absolute prohibition on classification for tax purposes. *Metal Form Corp. v. Leachman*, 599 S.W.2d 922, 925 (Mo. banc 1980).

In 1945, Missouri adopted a new constitution which provided three classes of property for tax purposes, (1) real property (2) tangible personal property, and (3) intangible personal property. In 1982, Missouri amended its constitution by adopting Article X, Section 4(b) which allowed limited, specified subclassifications of the classes set forth in Mo. Const. art. X, § 4(a). Clearly, the people by the amendment, took real property and divided it into three subclasses, (1) residential, (2) agricultural, and (3) commercial. Mo. Const. art. X, § 4(b) (adopted 1982).

The people said that property in the subclasses of class (1) "real property," *i.e.*, (1) "residential property," (2) "agricultural property," and (3) "commercial property," "may be *defined* by law." Having so said, they added these limiting words: "however, subclasses (1), (2), and (3) *shall not be further divided*, ..." Mo. Const. art. X, § 4(b) (emphasis added). The people then provided that farm land could be assessed on "its productive capability" as opposed to its costs; that the same percentage of value shall apply to all property within any subclass, and, that no real property could have a percentage in excess of thirty-three and one-third percent of true value.

Based upon prior taxing practices in this state, I doubt that there was a Missouri citizen who did not realize that this would ultimately result in agricultural property getting the lowest rate, residential the next lowest, and commercial property, the tax on which would pass back to the general public through pricing of products and services, being taxed at the highest rate. This the people could do, unless this classification had no rational basis and thereby offended the equal protection guaranteed by the United States Constitution, a question not raised by any party.

Surely no one could logically and rationally argue that the grant of the power to define property within the subclasses of real property was a grant of the power to destroy the classification just created. The word "define" has never before been so used. That is not its clear, unambiguous meaning. This is particularly true where the power to define is followed by the expressly limiting words "however, subclasses (1) [residential], (2) [agricultural], and (3) [commercial] *shall not be further divided.*" Mo. Const. art. X, § 4(b) (emphasis added). Is it possible that words could have been chosen having a clearer and more unambiguous meaning? The clear, unambiguous meaning of the words used constitutes an absolute prohibition against further subclassifying "residential" property.

Where is the ambiguity in the words "residential property" that would permit the legislature or authorize us to say that "residential property" is one thing if it contains not more than four units, and something else if it contains more than four units. There is no ambiguity. The clear, unambiguous meaning of "residential property" is property in which people reside. The Missouri General Assembly has defined "Residential Housing" to mean "a specific facility, work or improvement within this state, undertaken primarily to provide dwelling accommodations...." § 215.010, RSMo 1978. The United States Congress has defined the term "residential building" to mean "any structure which is constructed and developed for residential occupancy." 42 U.S.C. § 6832 (1982). The Oxford English Dictionary defines "residential" as "1. Serving or used as a residence; in which one resides.... 2. Connected with, pertaining or relating to, residence, or residences (in general or specific sense)....," and "residence" as "5. The place where one resides; one's dwelling place; the abode of a person...." 8 Oxford English Dictionary 517–19 (2d ed. 1961). Webster's Dictionary defines "residential" as "1a; used, serving, or designed as a residence or for occupation by residents ... 3: of, relating to, or connected with residence or residences...." Webster's Third New International Dictionary 1931 (4th ed. 1976).

Attributing to the words of Article X, Section 4(a) and 4(b), their clear and unambiguous meaning and their usual custom-

ary usage meaning, these sections specifically prohibit doing exactly what the legislature did when it adopted § 137.016.1(1), RSMo Cum.Supp.1984.

The total absurdity of the result reached by the principal opinion and the concurring opinion can only be understood when you realize that they take that part of subclass 1, "residential property," having in excess of four living units, and make it a part of subclass 3 "commercial" property, while subclass 3 is stated by the Constitution to include "utility, industrial, commercial, railroad and all other property *not included, in subclasses (1)* (residential) and *(2)* (agricultural) *of class (1)* (real property)." Mo. Const. art. X, § 4(b) (emphasis added). What, pray tell, do residential buildings having more than four units have in common with "utility, industrial, commercial, railroad *and all other property not included in subclasses* (1) [residential] and (2) [agricultural] of class (1) [real property]." Mo. Const. art. X, § 4(b) (emphasis added).

I am shocked at the majority's disregard for the rights of the renting population of the state. By refusing to read the plain words adopted by the people in Mo. Const. art. X, § 4(b), in their plain and ordinary meaning, the majority places this Court's approval upon the most regressive tax statute ever devised. While there are a few affluent who rent as a matter of choice, the great majority who reside in rental units do so because of their financial inability to buy their own residences. Anyone who thinks that the tax on the rental residences will not be passed on to the renter by the owner thinks and reasons in a vacuum. The price in Missouri for being compelled to rent a residence will be that the renter will pay indirectly approximately seventy percent more residential real estate tax than those who are fortunate enough to be able to own their residence. This places the heaviest tax burden on those who can least afford to bear it. The ability of Missouri renters to achieve the dream of residential ownership will be put off in time in the same proportion that the seventy percent additional indirect but very real residential real estate tax bears to their otherwise savable income.

The only hope for the renting population of this State lies in finding a higher court which may recognize that the right of this Court to misconstrue its own Constitution is limited by the Federal constitutional requirement that there must be a rational basis for the resulting classes, which is discussed by Rendlen, J., in his dissent. When those who are compelled to rent ultimately bear seventy percent more residential real estate tax than those of us who are more fortunate and can own our residence, there can be no rational basis for such a classification either by statute or by judicial misinterpretation.

The renting population of this State is a substantial part of Missouri's population. It is unfortunate that the important question of whether the rental property in which they live shall bear almost seventy percent more real estate tax than the residences of the more fortunate who own their homes should be decided by a split court, the regular members of which are evenly divided on this question.

I would set aside the submission and have the cause reargued before the regular Court. In the alternative, I would affirm the trial court and hold § 137.016.1(1), RSMo Cum.Supp.1984, to be unconstitutional.

I concur in the separate dissenting opinions of DONNELLY, J. and RENDLEN, J.