**BROOKSIDE ESTATES,**
et al., Appellants,

v.

**STATE TAX COMMISSION
OF MISSOURI, et al.,**
Respondents.

No. 75195.

Supreme Court of Missouri,
En Banc.

March 23, 1993.

Michael B. McKinnis, Lisa Demet Martin, St. Louis, for appellants.

R. Randall Turley, Aimee Smashey, Jefferson City, for respondents.

ROBERTSON, Chief Justice.

Here we consider whether properties improved with concrete mobile home pads qualify as residential property pursuant to Section 137.016.1(1), RSMo 1986, for purposes of ad valorem taxation. Our jurisdiction is founded on Article V, Section 3 of the Constitution vesting exclusive appellate jurisdiction in this Court where construction of the revenue laws is required.

We affirm the judgment of the trial court, holding that the property sub judice is commercial for purposes of ad valorem taxation.

## I.

The facts are stipulated. Appellants (to whom we collectively refer as "Brookside") own and operate mobile home parks in Jefferson County. The mobile home parks are improved with concrete pads each designed to serve as a foundation for a single mobile home and each fully served by utility hook ups. Brookside rents the concrete pads to individual mobile homeowners who anchor their mobile homes to the pads and live there.

The Jefferson County Assessor assessed the parks as commercial real property. The Jefferson County Board of Equalization affirmed, as did the State Tax Commission and the circuit court. This appeal followed.

## II.

On appeal, Brookside raises three issues. First, Brookside claims that Section 137.016.1(1) is not ambiguous and requires classification of its concrete pads as residential; second, that classification of mobile home parks as commercial property violates Brookside's right to equal protection under the federal and state constitutions; and third, that classification of mobile home parks as commercial property "creates a subclass of real property in violation of Article X[,] Section 4(b) of the Missouri Constitution."

### A.

Section 137.016.1(1) defines "residential property" as "all real property improved by a structure *which* is used or intended to be used for residential living by human occupants *and which* contains not more than four dwelling units." [Emphasis added.]

With a certainty born of hope, Brookside contends that the statute is clear on its face and that its real property, which is intended for residential living for human occupants, must be classified residential under the statute. Unfortunately, the certainty of Brookside's conclusion is the product of Brookside's blindness to another, equally plausible reading, that renders the statute ambiguous.

The ambiguity of Section 137.016.1(1) proceeds from uncertainty as to whether the "which" phrases modify the words "real property" or the word "structure." As Brookside says, the statute can be read to say that residential property is "real property ... intended for use for residential living for human occupants." But the statute can be read to say that residential property is real property improved by a structure; the structure must be "used or intended to be used for residential living by human occupants and [must contain] not more than four dwelling units."

In choosing between these two readings, we regularly side with the taxpayer, as the canons of construction require. *Morton v. Brenner*, 842 S.W.2d 538, 542 (Mo. banc 1992). The difficulty with that proposition in this case, however, is that each reading will gore a set of equally deserving taxpayers. Indeed, to adopt Brookside's reading of the statute would permit the tax assessor to aggregate all of the structures on contiguous real property owned by a single taxpayer to conclude that the statutory

four-dwelling-unit line of demarcation had been crossed. This is exactly the conclusion we rejected in *Rothschild v. State Tax Commission*, 762 S.W.2d 35 (Mo. banc 1988). There, this Court held that the "last antecedent rule" required the Court to conclude that the "which" phrases modify the word structure, not the words "real property." This construction aided the taxpayer by prohibiting the assessor from aggregating all the separate structures on contiguous property to push otherwise residential property over the line into the higher-taxed commercial category.

Brookside persists, however, insisting that the horizontal concrete pads it intends to lease to mobile home owners are structures themselves. This reading might prevail, were it not for the statutory language describing the attributes of a structure that qualify it for categorization as residential property. First, the structure must be "used" for residential living by human occupants. A concrete pad, without more, cannot be used for residential living. Human occupancy requires living *in*, not *on*. *See* Webster's Third New International Dictionary, 1561 (1976) (To "occupy" is "to reside *in* as an owner or tenant." [Emphasis added.]) Second, the structure may not contain more than four dwelling units. By implication, a residential structure must contain at least one dwelling unit. A "unit" is "a single thing." Webster's Third New International Dictionary 2500 (1967). A "dwelling" is "a building or construction used for residence." *Id.* at 706. A "residence" is "a building used as a home." *Id.* at 1931. A bare mobile home pad does not qualify as a dwelling unit; it is not a residence.

We add a final comment. Were we to read the statute ignoring both the last antecedent rule and *Rothschild*, as Brookside proposes, Brookside will achieve nothing. Brookside's property would still qualify as commercial property for ad valorem tax purposes. The assessor would simply aggregate all of the mobile home pads on Brookside's property, determine that there were more than four "structures" and deem the property commercial.

■ We hold, again, that the "which" phrases modify the word "structure." Real property is residential only to the extent that it contains a structure; the structure itself must be a dwelling unit used or intended to be used for human occupancy.

### B.

We turn now to consider Brookside's constitutional arguments.

### 1.

■ Brookside complains that classifying its mobile home parks as commercial property discriminates against mobile home parks as rental property vis-a-vis other forms of rental property. According to Brookside's thinking, there is no rationally acceptable distinction between a 20–unit apartment complex composed of 5 separate buildings, each containing 4 dwelling units and a mobile home park containing 20 mobile home pads. Under state law, Brookside's argument continues, the apartment complex owner will pay taxes based on a 19–percent residential assessment. The mobile home park owner will pay tax on a 32–percent commercial assessment. Brookside concludes that the statutory classification violates equal protection.

■ When considering tax classifications under attack for violations of equal protection, the Court applies a rational basis standard to determine the constitutionality of the tax classification adopted by the legislature. If the tax classification bears a rational relationship to a legitimate legislative objective, the constitutionality of the classification will be upheld. Palpably arbitrary classification violates equal protection. *Pierre Chouteau Condominiums v. State Tax Commission*, 662 S.W.2d 513, 514 (Mo. banc 1984), *quoting Allied Stores of Ohio v. Bowers*, 358 U.S. 522, 526, 79 S.Ct. 437, 440, 3 L.Ed.2d 480 (1959). The "fit" between the classification and the purpose need not be exact. Indeed, rational basis analysis sustains a legislative classification so long as that classification will further the legislature's purpose, no matter how inefficiently. Equal protection analy-

sis under Article X, Section 4(b) is identical to that conducted under the Fourteenth Amendment.

We believe that a rational basis exists for the classification adopted by the legislature about which Brookside complains. Through its tax classification, the legislature may well have chosen to favor those who construct residential improvements that are completely ready for human dwelling over those who merely prepare real property for subsequent improvements that permit residential dwelling. By placing the former in a classification resulting in lower taxes, the legislature has provided economic incentives for those who invest in ownership of ready-to-occupy residential dwellings. The investment in the former, in most cases, is substantially greater than the investment in the latter. It is rational for the legislature to choose to reward the former by permitting a quicker recoupment of investment through a lower ad valorem tax rate.

### 2.

■ Brookside's equal protection argument has a second component. Section 137.115.6, RSMo 1986, dictates that manufactured (or mobile) homes situated on real estate *owned by* the manufactured-home owner "shall be considered real property." Where a manufactured home rests on leased property, the manufactured home is "considered personal property" under the statute. Brookside contends that Section 137.115.6 permits unconstitutional discrimination against mobile home park owners who lease only land compared to mobile home park owners who own and lease mobile homes affixed to their land. Again, we apply the rational basis test.

We find a rational basis in the legislature's classification between leasing land, on the one hand, and leasing both land and mobile homes, on the other. The legislative incentive is as previously discussed. The legislature may have rationally chosen to encourage investors to provide ready-to-live-in rental property. Again, the investment in such property may be substantially higher than that required simply to prepare real estate to receive mobile homes. The investment recoupment rationale applies with equal force here.

Brookside's equal protection point is denied.

### C.

■ We come at last to Brookside's final argument. Article X, Section 4(a) mandates that "[a]ll taxable property shall be classified for tax purposes as follows: class 1, real property; class 2, tangible personal property; class 3, intangible personal property." Section 4(b) provides: "Property in class 1 shall be subclassed in the following classifications: (1) Residential property; (2) Agricultural and horticultural property; (3) Utility, industrial, commercial, railroad, and all other property not included in subclasses (1) and (2) of class 1." Brookside maintains that classification of its mobile home parks as commercial property "creates a subclass of real property in violation of Article X[,] Section 4(b) of the Missouri Constitution."

We disagree. "Rental housing has both residential and commercial aspects. The legislature might appropriately conclude that the commercial aspect dominates for buildings containing numerous units, whereas those containing only a few units have a predominately residential character." *Associated Industries v. State Tax Commission,* 722 S.W.2d 916, 918 (Mo. banc 1987). The same rationale applies to Brookside's argument here. The legislature might appropriately conclude that the commercial aspect of owning and renting bare mobile home pads outweighs its residential character, while the act of owning both the pad and the mobile home partakes of a more residential character. To the extent that Section 137.016.1(1) reflects that choice, no violation of the constitution occurs.

Brookside's argument, while creative, is unavailing. The legislature has not created an unconstitutional subclass of residential property. It has determined that Brookside's property is commercial and thus falls into another constitutionally approved category. Brookside is displeased

with that choice, though it can scarcely claim that its motivation for purchasing the mobile home parks is not commercial. The fact that the legislature's handiwork does not meet Brookside's financial tastes does not render the statute constitutionally unpalatable. The point is denied.

### III.

The judgment of the trial court is affirmed.

All concur.